Argued April 1, affirmed as modified May 23, 1974

# YOUNG MEN'S CHRISTIAN ASSOCIATION, *Appellant, v.* DEPARTMENT OF REVENUE, *Respondent.*

522 P2d 464

*Thomas S. Moore* of Morrison, Bailey, Dunn, Cohen & Miller, Portland, argued the cause and filed a brief for appellant.

*Glen V. Sorensen,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

Plaintiff appeals from a decision of the Tax Court affirming in part an ad valorem assessment of real and personal property owned by plaintiff. *Young Men's Christian Association v. Department of Revenue,* 5 OTC 281 (1973).

The property subject to assessment is owned by the Portland downtown Y.M.C.A., a charitable corporation. The Tax Court held that the following were subject to property tax: (1) property used in providing food service; (2) property used to house Selective Service draftees; (3) property rented to the Job

Corps for office space and recreation; (4) property rented for a barber shop, and (5) property rented for a tailor shop.

Plaintiff's kitchen and cafeteria facilities provide food services not only to the members of the Y.M.C.A., but also to the general public. The Tax Court held that the property was not exempt because the food operation "is a convenience but not required by the primary goals of the plaintiff" and because plaintiff "is engaged in competition with similar businesses which are subject to taxation." 5 OTC at 284.

 We approach the question differently. A charitable enterprise does not lose its exemption merely because it engages in competition with businesses which are subject to taxation. Nor is the exemption lost because the property is not *required* in carrying out the primary goals of the charity. It is enough if the activity undertaken on the property substantially contributes to the furtherance of the charity's goals.[1] If this test is met, it is immaterial that the charity competes with similar activities by those who are subject to taxation.

 The evidence in the present case shows that plaintiff's food service implemented its objectives in a substantial way. The cafeteria not only provided reasonably priced meals for the young Y.M.C.A. residents, but the availability of the food service facilitated

---

[1] As we noted in Mult. School of the Bible v. Mult. Co., 218 Or 19, 30, 343 P2d 893, 898-899 (1959): "A given facility does not have to satisfy the test of 'absolute indispensability' to the purposes of the institution in order to enjoy tax exemption. It is enough if it can be said to be incidental to the prime purposes of the institution and reasonably necessary to the accomplishment of that purpose."

the use of the Y.M.C.A. for recreational purposes and made it more convenient for those engaged in Y.M.-C.A. projects to attend meetings, a factor of importance in an organization largely dependent upon volunteer businessmen in shaping its programs.[9] The food operation was also used as a job training facility for handicapped individuals. The fact that food was also available to the general public does not make the exemption inapplicable. Nor, as we have said, is the plaintiff excluded from the exemption because it could have carried out its goals even without a facility for serving meals. Plaintiff is entitled to the exemption if the use of the property is a substantial factor in carrying out its charitable objective.

■ During the tax years in question plaintiff entered into a contract with the Armed Services to provide room and board for draftees arriving in Portland prior to the date of their induction. The draftees were automatically made members of the Y.M.C.A. and therefore had the benefit of other services of the Y.M.C.A., including a place to swim, shower, dance and meet other young people.

Defendant contends that in providing room and board for the inductees plaintiff operated the same as a commercial hotel. In this connection defendant stresses the fact that although plaintiff was awarded

---

[9] "* * * It [the food service] was of great value in planning the work of the Y.M.C.A. in that it enabled large groups of volunteer workers serving on essential committees to meet and confer at lunch and dinner hours, thus saving time. The various club organizations promoting the work of the Association were aided inestimably by being able to build their program around a noon luncheon or evening dinner." Appeal of Young Men's Christian Ass'n. of Pittsburgh, 383 Pa 176, 117 A2d 743, 762 (1955). See also Christian Business Men's Committee, Inc. v. State, 228 Minn 549, 38 NW2d 803 (1949).

the contract to house and feed the inductees, the Park Haviland Hotel had submitted a lower bid than plaintiff. Plaintiff was awarded the contract because, as explained by one of plaintiff's officers, the head of the Armed Services Induction Department "felt that the Y.M.C.A. provided a better over-all atmosphere, not necessarily because we had beds and meals, but because we had a staff that had a high degree of training working with young men. We had ears that were ready to listen. We had people on our staff * * * who cared in more than a way * * * that meant just a room or a food service."

We are of the opinion that the services provided by plaintiff under the government contract fell within the general charitable goals of the Y.M.C.A. organization. Again we observe that the exemption is not lost merely because in some respects plaintiff competed with private enterprise in providing a service incidental to its broad charitable objective.

■ The Tax Court also held taxable property rented by plaintiff to the Job Corps for office space and recreation. This space consisted of an area, formerly a lounge for members, which was walled off and then used by the Job Corps administrative personnel as an office for which plaintiff received $400 per month. Also within the space were two billiard tables and a ping-pong table. Plaintiff became involved in the Job Corps program in 1961 and 1962 to provide facilities for as many as 80 young people who, as one witness described it, were "dumped" on the community during the weekends. It appears that the Y.M.C.A. made an agreement with the University of Oregon to help develop a program for the Job Corps employees while they were on weekend leave. The Y.M.C.A. assumed

the task of serving as "program directors and program supervisors," for which there was a special need because of the problems attendant upon young people from a different part of the country being left alone in a large city.

The Y.M.C.A. considered it to be their duty to serve in loco parentis in guiding the Job Corps trainees during their weekend interludes. We regard their activity in this respect as being within the scope of the charitable objectives which the Y.M.C.A. espouses. The question is whether the use of the office space by the Job Corps personnel is related to these objectives.

Defendant takes the position that the area rented to the Job Corps was used as office space in the same way that any other lessee would use similar space for business or administrative purposes. Put in another way, it is contended that the Job Corps could have rented space in some other building in Portland and carried on its administrative duties in the same manner as it functioned in the area rented from plaintiff.

Defendant's point is well taken only if the presence of the Job Corps staff on the Y.M.C.A. premises was not a material factor in carrying out the entire local Job Corps off-work program. The evidence tends to show that it was important for the administrative personnel of the Job Corps to be in the Y.M.C.A. building to supervise the program for the trainees while they were in Portland. The Y.M.C.A. was to serve as "an extension of their [Job Corps] staff and be program developers and program supervisors when they * * * were not there." The Y.M.C.A. eventually discontinued its arrangement with the Job Corps principally because "during a great deal of the time that these Job Corps trainees were in town the Job

Corps paid personnel were nowhere to be found," and with the consequent shift of the responsibility from the Job Corps personnel to the Y.M.C.A. the latter found the burden too great to endure and therefore terminated this Y.M.C.A. program entirely. During the time the Job Corps administrative personnel occupied the office space in the Y.M.C.A. building, their activity was interrelated with the entire Y.M.C.A. program for the Job Corps trainees and inasmuch as we have found that the over-all program was within the scope of the charitable objectives of the Y.M.C.A., we regard the occupancy of the rented area as an integral part of a charitable enterprise.

■ On the other hand, we are unable to see how the barber shop and the tailor shop contribute in any substantial way to the accomplishment of plaintiff's charitable goals. Therefore, the assessment of the space devoted to these purposes was proper.

The decree of the Tax Court is affirmed as modified.