## IN THE OREGON TAX COURT

The YOUNG MEN'S CHRISTIAN ASSOCIATION
OF COLUMBIA-WILLAMETTE

*v.*

DEPARTMENT OF REVENUE

*and*

The COURT CLUB, INC.,
and Northwest Alliance For Market Equality
*Intervenors.*

(TC 2717)

Thomas H. Tongue, G. Kenneth Shiroishi, and Jeffrey F. Nudelman, Dunn, Carney, Allen, Higgins & Tongue, Portland, represented plaintiff.

Ted E. Barbera, Senior Assistant Attorney General, Department of Justice, Salem, represented defendant.

Michael J. Morris, Bennett, Hartman, Tauman & Reynolds, P.C., Portland, represented intervenors.

Decision for defendant rendered October 27, 1988.

## EDWARD H. HOWELL, Judge Pro Tempore.

Plaintiff appeals from an order of the Department of Revenue which denied a property tax exemption for the tax year 1985-86 for two separate tax accounts in Multnomah County. Plaintiff contends that it is a charitable institution and therefore entitled to the exemption under ORS 307.130.

The Young Men's Christian Association of Columbia-Willamette (YMCA-CW) is the owner of real or personal property, or both, at ten different locations in Multnomah County. The two properties in question are known as the "Metropolitan Fitness Center" (Metropolitan) and the "Commonwealth Fitness Center" (Commonwealth).

For many years the Multnomah County Assessor granted a charitable tax exemption to all the YMCA-CW's property. In June 1985, this court issued an alternative writ of mandamus directing the assessor to place Metropolitan property on the tax rolls or show cause why he had not done so. As a result, the assessor revoked the exemption not only for Metropolitan but for all the real and personal property owned by plaintiff in Multnomah County on the grounds that YMCA-CW was not engaged in "charitable activity" under ORS 307.130.

Thereafter plaintiff appealed to the Department of Revenue. After a lengthy hearing, the Department held that all of plaintiff's property was exempt except that located at Metropolitan and the personal property located at Commonwealth. The Department concluded that all the other YMCA facilities "advance charitable purposes" and were entitled to the exemption. Regarding the Metropolitan and the Commonwealth centers the order stated:

> "The providing of facilities for physical fitness can be a charitable purpose if done in a charitable manner. However, the two fitness centers are not operated in a charitable manner because of their policies to serve only a small segment of the community, their pricing structure, and the minimal element of giving."

Plaintiff appeals the decision of the Department of Revenue to this court. A motion to intervene was filed by The Court Club, Inc. (Court Club), a private health and fitness club, and Northwest Alliance For Market Equality

(N.A.M.E.), an association of health and fitness organizations. The motion was allowed.[1]

According to the present articles of incorporation, the purpose of the YMCA-CW is:

> "To promote the development of Christian character and activity in its members, the cultivation of Christian concern and the improvement of the mental, physical and spiritual condition of its members and other persons."

The plaintiff and all the other YMCA's in the United States, numbering about 1,000, belong to the National Council of YMCA's. Each of the individual YMCA's is autonomous and governs its own activities. Plaintiff and the others are operated by groups of volunteers. The headquarters of the National YMCA in Chicago is governed by a national board of 50 people elected from local YMCA's. The national office has a budget of $25 million, one-half of which comes from dues from local YMCA's which pay two percent of their gross revenue to the national organization.

Plaintiff serves the Portland metropolitan community through several branches. The branch facilities scattered through the area are programed to meet the needs of the particular area or neighborhood. Each branch, while generally autonomous, is answerable to the YMCA-CW, the plaintiff herein, which operates as the headquarters for the local branches. Each branch pays a percentage of its gross income to the headquarters.

Metropolitan was opened in 1977 at a cost of $4.3 million. It is a large, three-story, 68,600 square foot building. A family membership costs $525 to join, plus dues of $60 per month. A single person is charged $350 to join and $37 dues per month.[2] Metropolitan was designed for and is used to serve the working adult population of the downtown core area. It has approximately 3,600 memberships (approximately 4400

---

[1] There was evidence that Metropolitan and Commonwealth are in competition with other fitness centers such as Intervenors. However, the fact that an organization seeking a charitable exemption is in competition with for-profit businesses does not *per se* disqualify Metropolitan and Commonwealth from seeking the exemption. *YMCA v. Dept. of Rev.,* 268 Or 633, 522 P2d 464 (1974).

[2] Monthly dues vary slightly depending on age groups.

members), plus about 300 more who are involved in the Cardiac Therapy Program.

Commonwealth is located in the Commonwealth Building in downtown Portland. Again, the use is primarily for tenants of Commonwealth and adults located in the downtown area. In 1986 it had 145 members. Single persons are charged $125 to join, plus $27.25 per month. Couple memberships are $175 to join, plus $40 per month.

■ ORS 307.130 states, in material part:

"(1) [T]he following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a) [O]nly such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

There is no dispute that the YMCA-CW is an incorporated charitable organization. The disagreement is whether its property is actually and exclusively occupied or used in the charitable work carried on by the YMCA-CW. It is the plaintiff's position that the requirement is satisfied if the Metropolitan and Commonwealth centers are reasonably necessary to accomplish the YMCA-CW's charitable work. Plaintiff argues that it is not necessary to show that the Metropolitan and Commonwealth are charitable institutions separately from YMCA-CW and in their own right.

The plaintiff relies on the decision of the Oregon Supreme Court in *YMCA v. Dept. of Rev.*, 268 Or 633, 522 P2d 464 (1974). There the Tax Court held that kitchen food services provided by the YMCA in the downtown YMCA building were not entitled to an exemption because it was not required by the primary goals of the YMCA. The Supreme Court reversed and stated: "It is enough if the activity undertaken on the property *substantially contributes* to the furtherance of the charity's goals." (Emphasis added.) (268 Or at 635.)

The test of "reasonably necessary" or "substantially contributes" to the overall goals of an exempt organization does not apply to all cases. The test was rejected by the Supreme Court in *Found. of Human Understanding v. Dept. of Rev.*, 301 Or 254, 722 P2d 1 (1986). The court stated:

> "We have used a test of 'reasonable necessity' when discussing ministers' or supervisors' residences connected with churchs [sic] or schools, *German Apos. Christ. Church v. Dept. of Rev., supra; Multnomah School of Bible v. Mult. Co., supra.* The test involves the relationship of one piece of property to another; when the property for which an exemption is sought is connected with and essential for the use of exempt property, we have extended the exemption from taxation. We have not considered, and decline to do so now, whether property may be exempt because it is 'reasonably necessary' to carry out the overall goals of an exempt organization. The Foundation makes no claim that the ranch is required for the successful function of some other exempt property. We find no exemption on this ground." (301 Or at 264.)

Metropolitan and Commonwealth are not connected with, essential to, nor do they substantially contribute to the successful function of the plaintiff, YMCA-CW. In order to receive an exemption under ORS 307.130, Metropolitan and Commonwealth must each qualify on its own merits.[3]

Any organization claiming an exemption as a charity "must have charity as its primary, if not sole, object, and must be performing in a manner that furthers that object." *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 427, 723 P2d 320 (1986).

The crucial test is the "element of a gift or giving." *Dove Lewis, supra,* at 428. If no gift is involved, there is no charity. *Oregon Country Fair v. Dept. of Rev.,* 10 OTR 200, 205 (1986).

Plaintiff contends that its operation of Metropolitan and Commonwealth is accomplished primarily by volunteers; that it offers reduced rates or free memberships called subsidies or scholarships to qualified persons; and that it allows free use of the premises to community service organizations.

At Commonwealth, of the 140-150 members, only 11 received financial assistance valued by plaintiff at $495.

Plaintiff offered evidence showing that 227 members received some kind of financial aid in 1986 from Metropolitan.

---

[3] If the rule of "substantially contributes" or "reasonably necessary" were applied to all cases, an exempt parent organization could engage in various commercial enterprises in various locations and receive property tax exemption for each enterprise.

Metropolitan valued the aid at $95,419. In 1986, Metropolitan had approximately 4,400 members. Its total revenue was $2,408,530. Therefore, only approximately 5 percent of the membership received financial aid.

Plaintiff also offered evidence that 323 memberships were provided to special groups and valued that contribution at $295,320. These special groups were people who could not afford the membership fee or the monthly charge. They were not granted free or reduced membership but were allowed membership in exchange for work at the Metropolitan facility. The same situation applied to doctors and nurses who assisted in the cardiac treatment program. In exchange for their services, they were granted membership.

The Metropolitan facility is programed primarily for adults. Children under the age of 16 are only allowed to use Metropolitan on weekends and special family days when accompanied by their parents, if the parents are members.

While plaintiff agrees that it is the purpose of the YMCA to serve the whole of the Portland community, it admits that the mission of Metropolitan and Commonwealth is to serve the working adult population of the downtown core area. The reason, states plaintiff, is because there is no demonstrable need or demand for youth and family programing in the immediate downtown area.

The area served by Metropolitan is not limited to downtown Portland but also includes the southwest area of the city. The census figures show that within a one-mile radius of Metropolitan there were 11,959 people of whom 4.41 percent or 527 children were 5 to 14 years of age. In a three-mile radius there were 10,248 children between the age of 5 to 14 years. In that one-mile radius there were 2,063 families, 15.41 percent of which had incomes of less than $7,500 per year.

As mentioned previously, the fees for Metropolitan are $525 per family to join, plus $60 per month, and for a single person, $350 to join, plus $37 per month. In contrast, in the Northeast branch of the YMCA, the accent is on children's programs and the majority of the users are youths and senior members. Fees at Northeast are $100 per couple to join, plus $33 per month and $75 for a single person to join, plus $22 per month.

Plaintiff's focus upon meeting the needs of working adults in the downtown area makes understandable economic sense. Such policy, however, does not constitute charity as the sole or primary object of the organization. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev., supra.*

Plaintiff has not sustained the burden of proving its right to a charitable exemption for either Metropolitan or Commonwealth. The order of the Department of Revenue is affirmed.

Costs awarded to defendant.