# IN THE OREGON TAX COURT

NORTHWEST ALLIANCE FOR
MARKET EQUALITY,
an unincorporated association

*v.*

DEPARTMENT OF REVENUE

(TC 3236)

*and*

The YOUNG MEN'S
CHRISTIAN ASSOCIATION OF
THE COLUMBIA-WILLAMETTE

*v.*

DEPARTMENT OF REVENUE

(TC 3239)

Michael J. Morris, Bennett & Hartman, Portland, represented plaintiff Northwest Alliance for Market Equality.

Thomas H. Tongue, Dunn, Carney, Allen, Higgins & Tongue, Portland, represented plaintiff The Young Men's Christian Association of the Columbia-Willamette.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 7, 1992.

**EDWARD H. HOWELL, Judge pro tempore.**

The above appeals have been filed separately by the Young Men's Christian Association of Columbia-Willamette (YMCA) and the Northwest Alliance for Market Equality (NAME), an association of fitness organizations.

Both appeals are from an order of the Department of Revenue (Department) in 1992 which denied an exemption for the Metro YMCA for the tax years 1987-88 and 1988-89 but allowed the exemption for the tax years 1989-90 and 1990-91. The YMCA appeals the denial for the years 1987-88 and 1988-89 and NAME appeals the allowance of the exemptions for the years 1989-90 and 1990-91.

Both NAME and the YMCA have cross-intervened in the other's appeal. Both appeals have been consolidated for trial and decision in this court. By agreement of the parties, the record made before the Department is made a part of the record in these cases.

The eligibility of the Metro YMCA facility for a tax exemption was first before this court in 1988 in *YMCA v. Dept. of Rev.*, 11 OTR 101 (1988), and on appeal before the Oregon Supreme Court in 1989. *YMCA v. Dept. of Rev.*, 308 Or 644, 784 P2d 1086 (1989). The tax year involved was 1985-86.

This court held the Metro YMCA was not entitled to the exemption as a charitable institution under ORS 307.130(1).[1]

This court found that only five percent of the members received financial aid and that Metro YMCA was programmed primarily for adults and not children. Consequently, Metro YMCA's action did not constitute charity as the sole or primary object of the organization. The denial of

---

[1]

"[T]he following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a) * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

the exemption was affirmed by the Supreme Court. *YMCA v. Dept. of Rev., supra.*

Subsequently, the Metro YMCA facility was before the Department again for the later years of 1987-88, 1988-89, 1989-90 and 1990-91. The Department denied the exemption for 1987-88 and 1988-89 but allowed the exemption for 1989-90 and 1990-91. Both parties, YMCA and NAME, appeal.

In the original YMCA case for the tax year 1985-86, this court denied the exemption, citing *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 428, 723 P2d 320 (1986), where the Supreme Court stated that in deciding eligibility in charitable exemption cases, the crucial consideration is the element of a gift of giving. In *YMCA v. Dept. of Rev., supra*, 11 OTR at 106, this court held the Metro YMCA was not entitled to the exemption because the "giving" was absent as only five percent of the members received financial aid plus the fact that Metro YMCA was programmed primarily for adults and not children and their fees were higher than other YMCAs where more attention was focused on children.

All parties agree that since the 1985-86 tax decision, the Metro YMCA has undergone substantial changes. The YMCA management testified that the Metro YMCA had lost its direction and that changes had to be made from an adult facility to a full-family YMCA with more emphasis on youth activities.

In 1987, the YMCA board decided to hire a new chief executive officer and did so in March, 1988. A five-year plan for the future of the YMCA was adopted in 1988. Surveys were made of the community and membership. Many of the existing programs were implemented. Many new programs were started. Among them were: a disabled exercise program, a community group home program involving drug and alcohol rehabilitation for people from the juvenile justice system and problem children, running and walking programs, health and fitness education and a fetus research program in conjunction with Oregon Health Sciences University, strength training classes, self-defense classes, youth employment program, a Hispanic children's program, and a parenting program for

mothers. By 1990, 24 new programs had been started. Additional staff and supervisors were hired.

In July, 1987, the joining fees were reduced from $400 for a single adult financially able to pay, to $200, for a family from $550 to $300, and for a senior adult, from $200 to $100. Also, a child could be admitted into the facilities if 14 years old without a parent whereas previously, they had to be accompanied by a parent.

In 1990, the name of the Metro Fitness Center was changed to the Metro Family YMCA.

■ The Department recognized all the commendable changes that had been made in the area of youth and family services since the 1985-86 tax year and the court decisions in the prior case. The Department found that the Metro YMCA during the years involved, 1987-88 and 1988-89, was in a transition period. During that period, the activities were primarily planning, making studies, evaluating and hiring new and additional staff for the future programs. The court agrees with that conclusion. For example, there was testimony that the 24 new programs for Metro YMCA were started in 1990 when the name was changed from Metro Fitness Center to the Metro Family YMCA. The court also agrees with the Department that during this transition period of 1987-88 and 1988-89, the Metro YMCA was not entitled to a property tax exemption.

However, for the tax years 1989-90 and 1990-91, a different situation is presented. The new plans and programs were in place and operating, dues had been reduced and emphasis was now on the children and the family instead of young adults. Financial aid to the membership had been increased from the five percent in the tax year 1985-86 to approximately 30 percent in 1989-90.

The Department of Revenue found that the Metro YMCA qualified for the exemption for the tax years 1989-90 and 1990-91. The court agrees and concurs in that conclusion.

The order of the Department of Revenue is affirmed. No costs.