DECISION
Plaintiff appeals Defendant's denial of its property tax exemption application for its property identified as Account 00486209 (subject property) for tax year 2010-11. A trial was held in the Oregon Tax Mediation Center, Salem, Oregon, on April 12, 2011. Theresa Deibele (Deibele), Administration and Finance Director, ChristieCare, appeared and testified on behalf of Plaintiff. Kit Kryger (Kryger), LLSW, a clinical consultant to Plaintiff, testified. Linda Dunn (Dunn), supervisor, Clackamas County Assessment and Taxation, appeared and testified on behalf of Defendant.
Plaintiff's Exhibits 1 through 6 were received without objection. Plaintiff's post-trial brief was filed May 13, 2011, and Defendant's post-trial brief was filed May 16, 2011.
 I. STATEMENT OF FACTS
The subject property is described by Deibele as "mostly an island located in the Clackamas River." Deibele testified that the subject property should be exempt from property taxation because it meets the statutory requirements of "both [ORS] 307.130(2)(a) and 307.130(2)(c)." (Ptf's Evidence Submission List at 1.)
Deibele testified that "[f]ortunately, ORS 307.130(2)(a) does not speak only of `occupying' the property — it allows use of the property as well." (Id. at 2 (emphasis omitted).) *Page 2 
Deibele testified that the subject property is not occupied by Plaintiff because there is no way to access the island. She testified that Plaintiff "removed the rickety tram that carried children" from the lodge to the island and "extended the riverside fence to limit access, and installed a ten foot fence around the south residential side of the property." (Id. at 2.) In deciding to make substantial safety improvements at a cost of "over $192,000" to the subject property, Deibele testified that Plaintiff "understood the risk to the acutely mentally ill children we serve." (Id.; Ptf's Ex 6-1.)
Deibele explained that Plaintiff operates "a residential psychiatric treatment program, called Cedar Bough, on the property * * * [it is] the nation's first culturally-specific Psychiatric Residential Treatment program for Native American youth and others. This site was specifically chosen for the Native American program because the 35 acres hold tremendous natural beauty in the hills, trees, river and wildlife; all of the land provides a calming, therapeutic environment for these troubled children." (Ptf's Evidence Submission List at 2.) She conceded that "ChristieCare (sic) use of the island is admittedly unconventional." (Id.) Because Plaintiff has not maintained the island nor has the means to access the subject property, Plaintiff alleges that it does "the next best use: give the children maximum visual and therapeutic use of the beauty of the island and its wildlife." (Id.) Deibele explained the subject property's use:
 "The majority of the children come from Native American reservations and are accustomed to open and wild spaces; they thrive on the views of the island area as a counterbalance to the protective psychiatric setting. We intentionally conduct therapy in rooms that face the island, giving children a clear view of the calming environment, wildlife, and teepee structure on the island. Seeing its natural beauty is critical to the spiritual and emotional well-being of the Native American children who reside in our program."
(Id.) Defendant alleges that "[t]he claimed use is at such a low level, it has little relationship to the exempt facility. The island appears to be undeveloped land not presently needed. The de minim is (sic) use hardly justifies exempting the property." (Def's Ltr at 1, May 12, 2011.) *Page 3 
Deibele wrote that "[t]he island also serves an important use for the agency as a buffer between us and our neighbors. * * * [T]he realities are that we are running a facility for mentally ill and emotionally troubled children, and the sights and occasional sounds from such a program can sometimes be distressing. The island gives us buffer to those neighbors across the river: the foliage on the island dissipates sound and also gives a privacy screen for our clients." (Ptf's Additional Information to Tax Court at 3.) Defendant characterized "[t]he argument that the island serves as a buffer zone * * * specious," stating that:
 "[t]ypically, buffer zones are attached or adjacent to facilities that derive benefit from that use. In the case of Christie Care, the parcel is an island in the middle of the Clackamas River The river between the residential facility and island is open water and available for public use. Individuals, including families engage in many varied types of water sports. What buffer is available to them?"
(Def's Ltr at 1, May 12, 2011.)
Kryger, a licensed clinical social worker who has worked with Plaintiff for more than 12 years, testified the "native youth," ranging in age from thirteen to eighteen years of age, that participate in the "Psychiatric Residential Treatment Services program" are "one step" away from "a hospital." He described the characteristics and culture of individuals[1] who are treated at the facility. He also testified about the incorporation of native healing practices, e.g., "drumming," "sweats," "smudging," "talking circles," "walk abouts," and beading and art, used in therapy. Kryger emphasized that the subject property was selected because the island was once used by the Siletz and Grande Ronde tribes as "hunting and fishing lands" and "creates a *Page 4 
natural environment for healing." He testified that the subject property "was blessed by native elders to cleanse it" prior to Plaintiff's use.
Dunn testified that Defendant was "denied access" to the subject property because it "was not safe." Dunn stated that the subject property has not been "tax exempt since 2005." She further testified that if Defendant "cannot review [the property], it cannot reasonably grant exemption." Dunn testified that there is no evidence that the subject property has been "maintained."
Deibele testified that "ChristieCare is providing therapeutic and rehabilitative activities for children on the property in question. * * * [T]he County agrees that we are a rehabilitation facility and therefore we should be exempt from taxation on `all real or personal property of a rehabilitation facility . . .' (ORS Sec. 307.130(2)(c), emphasis added.)" (Ptf's Evidence Submission List at 1. (Emphasis in original.)) She emphasized that the there is "no use requirement" in this section of the statute in contrast to ORS 307.130(2)(a). Dunn testified that Defendant does not agree that Plaintiff operates a rehabilitation facility, specifically the activities are not occupational rehabilitation referenced in ORS 307.130(2)(c) and defined in ORS 344.710. Deibele testified that Plaintiff provides "rehabilitative services to mentally ill youth." (Ptf's Evidence Submission List at 3.) She testified that the rehabilitation is "more clinical therapeutic, than occupational," but Plaintiff does assist them to obtain "food handler's certificates" and "providing ground work for preparing children" to enter the workplace. (Ptf's Additional Information to Tax Court at 1.) Deibele wrote that the "Oregon Department of Human Service also recognizes us as a rehabilitative facility; it pays us for `rehabilitative services' (See Exhibit 1 of the prior Evidence List) to be provided to youth at that site." (Ptf's Additional Information to Tax Court at 2.) *Page 5 
Deibele concluded by stating:
 "Our use of the island parcel contributes substantially to the furtherance of ChristieCare's charitable purposes — to bring healing and support to children recovering from trauma or managing mental illness."
(Id. at 3.)
 II. ANALYSIS
"Generally, all property located within Oregon is taxable." LivingEnrichment Center v. Dept. of Rev., 19 OTR 324, 328 (2007) (citingORS 307.030). "It has long been the rule in Oregon that property is subject to taxation unless specifically exempted." Id. (quotingChristian Life Fellowship, Inc. v. Dept. of Rev.,12 OTR 94, 96 (1991)). Exemption provisions "should be strictly construed in favor of the state and against the taxpayer."North Harbour Corp. v. Dept. of Rev.,16 OTR 91, 94 (2002) (citing Mult. School of theBible v. Mult. Co.(Mult. School of the Bible),218 Or 19, 27, 343 P2d 893 (1959)). That rule of construction means "strict but reasonable[,]" which "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent."Id. at 95 (citing Mult. School of the Bible,218 Or at 27-28).
Plaintiff asserts that the subject property qualifies for exemption from property taxation as of July 1, 2010, because it meets the statutory requirements of ORS 307.130(2)[2] which provides, in pertinent part, that:
 "Upon compliance with ORS 307.162, the following property owned or being purchased by * * * charitable * * * institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions." *Page 6 
The parties agree that Plaintiff is a charitable institution. The issue before the court is whether the use made of the subject property qualifies for exemption under the statute. Property or a portion of a property shall be exempt from taxation if it is "actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions." ORS 307.130(2)(a). "`[T]he words exclusively occupied or used,' * * * refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution." Mult.School of Bible,218 Or at 36-37. "It is the actual occupancy of the property which determines its right to exemption[.]" Id. at 40 (citing HibernianBenevolent Society v. Kelly,28 Or 173, 42 P 3 (1895)).
ORS 307.130(2)(a) requires that the property be "actually and exclusively occupied or used" in the charitable work of the owner or occupant. "To qualify for a charitable exemption under ORS 307.130, the taxpayer must show first that `the activity undertaken on the property substantially contributes to the furtherance of the charity's goals.'YMCA v. Dept. of Rev., 268 Or 633, 635, 522 P2d 464 (1974); or, stated another way, that such a use `is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution.'" GermanApostolic Christian Church v. Dept. of Rev.,279 Or 637, 641-42, 569 P2d 596 (1977), citing Mult. School ofBible, 218 Or 36-37. "Secondly, it must be shown that the property was `exclusively occupied or used' for such a purpose."Id. at 642. The Oregon Supreme Court has construed this language to require focus *Page 7 
upon "the primary as distinguished from an incidental use." Id. The Court concluded that, if the primary use of the property is reasonably necessary for the charitable functions of the taxpayer, an exemption under ORS 307.130 is allowed. Id.
There is no dispute that Plaintiff is not occupying the subject property, an island located in the Clackamas River. Plaintiff describes its use of the subject property, stating "[the children] use the island in a therapeutic sense every day." (Ptf's Additional Information to Tax Court at 2.) Plaintiff explained that it makes the "best possible use of the island by using rooms in the riverside lodge for therapy sessions with our psychiatrists, counselors and therapists. The wild beauty of the island, complete with fish, deer, and osprey provides a soothing counterweight to the emotional troubles faced by the children." (Id.) Plaintiff's self-described "best possible use" of the subject property is limited to line of sight from the "riverside lodge" therapy rooms. This is evidence that Plaintiff's use of the subject property is incidental rather than primary. There is no evidence stating that Plaintiff's therapy sessions would be substantially different or terminated if it did not own the subject property or lost its line of sight view of the island. The location of the subject property is undeniably a benefit to Plaintiff, but its use is not primary to achieving its charitable purpose. Plaintiff's use of the subject property is incidental and does not meet the statutory requirement of actual and exclusive use by Plaintiff.
Plaintiff puts forth an alternate argument that the subject property qualifies for exemption, stating that Plaintiff's "activities all meet the definition of a `rehabilitation facility' under ORS 344.710." (Id. at 1.) ORS 307.130(2)(c) provides that "[a]ll real or personal property of a rehabilitation facility * * *" shall be exempt from taxation. ORS 307.130(2)(c) *Page 8 
states that "[a]s used in this subsection, `rehabilitation facility' means either those facilities defined in ORS 344.710 or facilities which provide individuals who have physical, mental or emotional disabilities with occupational rehabilitation, activities of an education or therapeutic nature, even if remuneration is received by the individual." Rehabilitation facilities defined in ORS 344.170 are
 "nonprofit sheltered or community-based service established and operated by a public or private organization to provide two or more of the following services for individuals with disabilities:
 "(1) Vocational assessment.
 "(2) Community integration.
 "(3) Training.
 "(4) Employment."
In summary, ORS 307.130(2)(c) exempts real property of a rehabilitation facility. Plaintiff does not operate a rehabilitation facility at the subject property's location. Plaintiff offers none of the listed services at the subject property's location. Plaintiff alleges that, by incorporating a use of the subject property into the therapeutic program offered at a different location, it meets the statutory requirements of a rehabilitation facility at the subject property's location. Unfortunately for Plaintiff, the rehabilitation facility must be operated at the real property to qualify for the exemption from property taxation.
 III. CONCLUSION
After careful review of the evidence and testimony, the court concludes that the primary use of the subject property is not reasonably necessary for Plaintiff's charitable functions and *Page 9 
Plaintiff does not operate a rehabilitation facility at the subject property's location. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of July 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron July 20, 2011. The Court filed and entered this documenton July 20, 2011.
[1] Kryger testified that the average life expectancy of Native Americans is "42 years of age" and "death and suicide" and "chaos and violence" are a real part of their "existence."
[2] References to the Oregon Revised Statutes (ORS) to are year 2009. *Page 1