No. 1 December 19, 2014 1

IN THE OREGON TAX COURT
REGULAR DIVISION

EVERGREEN AVIATION & SPACE MUSEUM,
and the Captain Michael King Smith
Education Institute,
*Plaintiffs,*
*v.*
DEPARTMENT OF REVENUE,
*Defendant.*
(TC 5129-31)

Plaintiffs (taxpayer) appealed from a Magistrate Division decision as to property tax exemption for certain spaces used by taxpayer at its site in Yamhill County. Taxpayer owns and leases property in Yamhill County (the county) that is operated generally as a museum relating to air and space equipment, activity and exploration and related scientific educational activity. The county and Defendant Department of Revenue (the department) acknowledged that much of the property was exempt from taxation as being related to scientific activity, but the department asserted that some of the property for which taxpayer claims exemption did not qualify for exemption, and also questioned exemption for portions of the land parcels on which the museum and theatre are located. Following trial, the court found that the department could not in connection with an appeal by taxpayer assert a counterclaim that, in effect, sought to do what the assessor never purported to do—disqualify from exemption certain land. The court made decisions as to other areas involving mixed uses and further ruled that the matter be continued for consideration of final resolution of outstanding issues.

Trial was held September 11, 2013, in the courtroom of the Oregon Tax Court, Salem.

Kevin L. Mannix, Attorney at Law, Salem, argued the cause for Plaintiffs (taxpayer).

Douglas M. Adair, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Decision rendered December 19, 2014.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This property tax exemption case is before the court after trial and post-trial briefing.

## II. FACTS

Many of the background facts were agreed upon in a partial stipulation. Plaintiffs (taxpayer) own and lease property in Yamhill County (the county) that is operated generally as a museum relating to air and space equipment, activity and exploration, and related scientific educational activity.[1] The county and Defendant Department of Revenue (the department) acknowledge that much of the property is exempt from taxation as being related to scientific activity.

However, the department asserts that some of the property for which taxpayer claims exemption does not qualify for exemption. More particular facts are set forth in the following discussion of each category or item of property that the department asserts is taxable.

A.  *Theatre*

This space is used primarily to play movies of two types. The first type of movie can be described as related to the subjects that form the basis for the conclusion that most of the museum space is exempt—aeronautics, history of flight, etc. The other type of movie can more correctly be described as having an entertainment function unrelated to flight or science. This borderline can be difficult to establish completely. For example, the department questions whether science includes history and suggests that a film about Lewis and Clark should not be considered related to science. The court considers the department's views in this regard to be too grudging. The boundaries of "science" and "history" are simply not that well defined. Consider that President Thomas Jefferson was a man of the Enlightenment and a movie about the expedition he commissioned might well touch on matters suggested by this report of the National Park Service (http://www.nps.gov/nr/travel/lewisandclark/encounters.htm, last visited Dec 16, 2014):

> "Between 1804 and 1806, Lewis and Clark made the first systematic reports, based on scientific measurement and observations, of the Missouri River—not only its course, but its flora and fauna, depth and current, tributaries

---

[1] Taxpayer leases real property in different tax accounts and owns personal property thereon.

and inhabitants. They continued onward to document their observations in the Rocky Mountains and the Pacific Northwest. Lewis and Clark described for science at least 120 mammals, birds, reptiles and fish, as well as at least 182 plant species. They made the first attempt at a systematic record of the meteorology of the West, and less successfully attempted to determine the latitude and longitude of significant geographical points. These facts set them apart from other contemporary expeditions, most notably those of Zebulon Pike, which made no new scientific discoveries."

That said, there is no question that films having no connection, even indirect, with the purposes of the museum are shown in the theatre.

In addition, the theatre was rented out to others. These included for-profit business operations using the space for meetings unrelated to the purpose of the museum. The department has demonstrated in its post-trial submission, and taxpayer has not rebutted, that the revenue from rental of the theatre, at least for the 2010 calendar year, exceeded the amount of revenue generated from showing of films related to the purpose of the museum.

The department argues that a relative revenue test be used to determine whether the nonexempt use of the theatre space is such as to disqualify the space for exemption purposes. The court is of the view that an analysis of the time used for exemption-related movies as compared with time used for nonexemption-related movies and rentals to third parties would be the better analysis for purposes of determining whether any portion of the space is exempt. After all, revenue may well be indirectly related to the actual use of space. The use of property, not revenue from property, is the focus of the statute and case law.

Neither party had the benefit of the court's view on the proper approach to the allocation of space in the theatre as between exempt and nonexempt uses. Accordingly, the court will continue the case for the purpose of allowing the parties to consider whether they can agree on a conclusion as to partial exemption. If they cannot, the matter will be addressed in a further evidentiary hearing.

B.   *Cafés, Kitchen, and Concession Stand*

The café space is used by patrons of the museum, volunteers who provide services at the museum, and other visitors. One need not be a museum visitor to enter or use the café space.

The kitchen area is used for preparation of food for the café space and also for preparation of food that is catered to special events that occur on the museum grounds.

The concession stand area is used to sell typical movie concessions of food and drink items. The area is used in part for ticket sales to the movie theatre.

The department asserts, and taxpayer does not deny, that there is no discount element in the pricing of the items sold in any of these areas. The revenues for the 2011 year for all such activities were approximately $1,025,000. Of this amount, the catering activity amounted to approximately $195,000. Meals provided to staff or volunteers amounted to approximately $117,000 in 2011.

The department asserts, and the taxpayer does not deny, that there is nothing scientific about the activities carried on in these spaces. Rather, taxpayer contends that food service is necessary to retain patrons at the museum. Taxpayer points out that the nearest alternative source of food is over one mile away and access to that food would entail leaving the museum grounds. As to both food service and concessions, taxpayer argues that these items have become things expected by persons who attend museums or theatres.[2]

The department asserts that the argument regarding retaining museum customers on site is not well taken given the fairly healthy admission prices that would tend to cause those attending the museum to return from nearby food service facilities if the museum visit had not been completed.

---

[2] Taxpayer expressly does not rely on the argument that such spaces are exempt because the income from these areas and activities goes to support the concededly exempt portions of the property. Oregon does not allow such considerations in considering exemption. *Corp. of Presiding Bishop v. Dept. of Rev.*, 276 Or 775, 777-78, 556 P2d 685 (1976) (citations omitted).

Taxpayer put on witnesses from the management of the museum regarding their views on why food service was needed. Taxpayer also put on a witness who has studied museums and their patrons. This witness talked about what museum patrons have come to expect in the overall museum experience. However, even if these witnesses have accurately described the expectations of the public, the expectations of patrons or potential patrons is not an element that the Oregon tax statutes consider to be directly relevant on the question of exemption.[3] Such expectations may well outdistance the decisions of legislators as to what properties should contribute to the revenues of government and what properties are exempt.

Case law in this area offers important guidance. Taxpayer invokes the decision of the Oregon Supreme Court in *YMCA v. Dept. of Rev.*, 268 Or 633, 522 P2d 464 (1974). In that case the YMCA maintained at its urban facility a cafeteria which served food, at "reasonabl[e]" prices, to persons staying at the facility, persons using the facility, staff, and business persons active in the support of the facility. *Id.* at 635. The cafeteria was also used for job training. *Id.* at 636. The court found the cafeteria space to be exempt, observing that the food service activity implemented the exempt objectives of the YMCA in a substantial way. *Id.* The court noted the connection of the meals to the residential activity of the YMCA, the fact that the food service facilitated the use of the property for the exempt recreational purposes and the convenience of the service for supporters of the organization when they attended meetings on site. *Id.* The facility was in the downtown urban area of Portland and other places to obtain food were obviously present. *Id.* at 634.

Application of this governing precedent requires first an identification of the exempt purposes of the taxpayer. On this score, the department takes a narrow view, distinguishing the *YMCA* case in saying "By contrast, a scientific institution is necessarily engaged in 'scientific work,' which does not include providing meals."

---

[3] There was no evidence supplied from anyone who actually has attended the museum.

The department has conceded the exempt status of most of the property owned or used by taxpayer. That property does not include laboratories or other places where "scientific work," in any strict sense, takes place. The court therefore finds no basis for the department's unsupported conclusion that a scientific institution, or stated differently, an institution entitled to an exemption under the scientific prong of ORS 307.130, must carry on "scientific work."[4] Rather, exemption is also available for property used to educate or expose the public to scientific concepts, events, principles and the application of science to the problems and opportunities of human life.[5] Under the *YMCA* case, the question then becomes whether the food service activity that exists at the museum implements the objectives of taxpayer in a substantial way. The fact that the activity is not strictly necessary to the accomplishment of the exempt objectives is not fatal. Nor is the fact that the food is available to the general public or that the activity may compete in some way with taxable properties. These are all teachings of the *YMCA* case.

Applying these principles, the court concludes that the food-service-related property is exempt. While it is true that other food is available nearby, the revenue numbers indicate that a substantial number of visitors to the museum make use of the facilities.[6] Provision of meals to staff parallels a similar fact in the *YMCA* case. Here, taxpayer makes substantial use of volunteer services to accomplish its goals. Those volunteers are provided meals in the facilities.

It is true that the kitchen facilities are used to provide catering to outside events. Persons attending such events are often, if not always, permitted to visit the museum areas. While the revenues from such activities are

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

[5] Indeed, the department in its briefs acknowledges that a combined educational/scientific use is exempt.

[6] The record includes numbers on total revenue, revenue from catering, and the value of meals provided to volunteers. The record does not appear to identify how many, if any, patrons of the cafés are member of the public who are not museum patrons. However, the location of the museum, at some distance from other food service facilities, supports a conclusion that the number of persons coming to the cafés solely for food is small.

not insignificant they are a relatively small portion of the overall revenue of the kitchen and café operations. The court is of the opinion that this use of the kitchens is not such as to disqualify the kitchen-related property from exemption.[7]

As to the concession stand for the theatre, no part of the stand space used for sale of concessions is exempt. This property is analogous to the barbershop space in the *YMCA* case.

C.   *Gift Shops*

The legislature has addressed gift shop property and allowed exemption in a number of situations. *See* ORS 307.130(2)(d), (e), and (h). None of those apply here. The legislature has also specifically disallowed exemption in the case of gift shops in art museums. ORS 307.130(2)(f). For religious organizations, those portions of property used as a store or shop are taxable. ORS 307.140(1).

It is clear that the operation of a shop cannot make the shop property exempt merely because the proceeds of the shop go to support the activities of a taxpayer. This court has, however, indicated that a shop might be exempt if it substantially contributes to the accomplishment of the exempt purposes of a taxpayer. *Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305, 308-09 (1992). The department argues that the holding in *Mercy Medical* should be limited in its application to hospitals. The court disagrees. The approach of the court in *Mercy Medical* was basically the same as the substantial factor test of the *YMCA* case, a case that the department concedes is authority for the decision in this case.

Some of the inventory in the gift shop seems clearly related to the goals of taxpayer to introduce and interest visitors in the science and history of aviation. Models of planes are the most obvious example. Other items such as

---

[7] Taxpayer's income statement from 2011 shows $196,496 in catering sales. Total café food sales for that year were $1,023,090.23. Special events include weddings, birthday parties, dances, receptions, business meetings, and wine festivals. Special event customers "may rent all or portions of the museums, the theatre, and the grounds, and the Museum offers catering for most functions." Some events were public, whereas others were private.

items with the logo of a related business, general merchandise, items of clothing clearly directed at visitors to Oregon and garden and housewares are unrelated to the exempt purposes of the museum. The evidence relied upon by the department demonstrates that the sale of items related to the purpose of the museum are a small fraction of the total sales of the shop. The gift shop space does not meet the substantial factor test.

## D. *Classrooms 213 and 214 and Mezzanine*

The department objects to exemption for these spaces on the grounds that they are primarily rented out to third-party users. The department acknowledges that such rental does not occur in only one location of the buildings. It also requests that all personal property used for such outside group rentals be found to be nonexempt. The department's basis for objection is an analysis of revenues from outside rentals and a record of usage that the author testified was not accurate.

Taxpayer presented testimony of credible witnesses that the primary use of these spaces was for educational programs and usage related to the purpose of the museum.

The court concludes that taxpayer has borne its burden of proof as to the building space usage. However, the department position as to personal property used in connection with rental of space to third parties is sustained.

## E. *Land-Exemption Issues*

The department questions exemption for portions of the land parcels on which the museum and theatre are located. Some of the area is subject to concessions by the department in this case that are to be given effect. In addition, however, taxpayer argues that a stipulation entered into in the Magistrate Division proceedings should be binding on the department in this division.

The stipulation in question did not purport to bind the parties at all levels of litigation in this court. Accordingly, the *de novo* characteristic of a trial in this division requires that the stipulation entered into at the level of the Magistrate Division be given no effect unless both

parties agree that it should be given effect. *Dept. of Rev. v. Guardian Management Corp.*, 16 OTR 17, 20 (2002).

Nor are taxpayer's arguments relating to preclusive effect of a different decision of the magistrate persuasive. That case involved different property and different issues from those present here.

However, as to tax lot 601, the initial action of the assessor was to notify taxpayer that all of the land was exempt (not the conclusion or action of the assessor as to tax lot 600). It is the assessor, and not the department, who is charged with making this decision. Therefore, the court concludes that no appeal as to that land has been taken as there was no adverse action to appeal.

The opinion of the court is that the department may not in connection with an appeal by taxpayer assert a counterclaim that, in effect, seeks to do what the assessor never purported to do—that is, disqualify from exemption certain land.[8] While it is true that taxpayer did not raise this issue in connection with opposition to the motion seeking leave to amend and add a counterclaim, the court views this matter as in the nature of a question of subject matter jurisdiction that can and must be raised by the court. This tax lot appears to include the driveway or access road about which other arguments, now moot, have been made.

As to tax lot 600, the position of the department is that the land adjacent to the museum, with the exception of an "arrow" shaped parcel on this tax lot, is not used for the purposes of the museum and must therefore be considered nonexempt. Taxpayer responds that this land helps to create a campus atmosphere that is related to the purposes of the museum. Taxpayer also argues that a berm area should be exempt as it is required by land use regulations and that the road leading to the museum is necessary to the operation of the museum.

The court is of the view that while a campus atmosphere may be desirable, that alone is not sufficient to

---

[8] This situation differs from certain matters that by statute may be raised by an assessor or the department even when the initial decision of the assessor was not objectionable to the taxpayer. *Cf.* ORS 305.287.

support exemption. With respect to the berm area, the position of taxpayer in its Urban Growth Boundary Amendment application was inconsistent with the position now argued. The court is of the opinion that the berm area is not qualified for exemption. Other land not covered by stipulations in this division of the court and extending beyond the footprint of the generally exempt improvements is taxable, except for such a border portion as may be agreed upon by the parties and, absent such agreement, by further trial proceedings as to what a typical border for such a building is. As to land beneath structures on tax lot 600, a portion is exempt equal to the relative square footage of exempt use and square footage of nonexempt use as determined in this opinion.

F.  *Parking*

There are a significant number of parking spaces adjacent to the museum and theatre building. Taxpayer claims the benefit of ORS 307.130(2)(b), an apparently broad grant of exemption for parking on property owned or being purchased by exempt organizations. The department correctly observes that because the property in question is being leased by the museum, ORS 307.130(2) does not apply.

Taxpayer points out that ORS 307.112 also can serve as a basis for exemption and the court accepts this position. The remaining question is whether some allocation of exempt and nonexempt space is needed as the record indicates that some use of parking spaces is made by employees of a for-profit organization that makes use of the theatre building.

The court is of the opinion that an allocation is required and should be done on the basis of the ratio of space occupied by the for-profit entity and otherwise found to be nonexempt (such as the space in the theatre allocated to nonexempt use by reason of display of nonexempt movies) as compared with the total space in the museum and theatre properties.

G.  *Basement Area*

Taxpayer claims that it has been surprised by the post-trial assertion that a basement area in the theatre building is not exempt. It appears to the court that, given

the assessor's actions in expressing exemption conclusions as a percentage of the total improvements, specification was needed in connection with the trial. That occurred as to most of the spaces. It appears not to have occurred as to the basement area.

The court is of the opinion that unless the parties are able to come to agreement as to this space, the matter should be the subject of further brief proceedings, to be coupled with any other matters that the court has indicated in this opinion should go to hearing if the parties are not able to reach an agreed upon solution.

### III.   CONCLUSION

This matter is continued for consideration by the parties of final resolution of outstanding issues, further hearing if necessary on outstanding issues. The court understands that the parties reached a framework of agreement as to personal property and expects a report as to the outcome of applying that framework and the necessity of any further proceedings in that regard. Now, therefore,

IT IS THE DECISION OF THIS COURT that this matter is continued for consideration by the parties of final resolution of outstanding issues, further hearing if necessary on outstanding issues.