No. 14          February 27, 2013          95

IN THE OREGON TAX COURT
REGULAR DIVISION

CORVALLIS NEIGHBORHOOD
HOUSING SERVICES, INC.,
dba Willamette Neighborhood Housing Services,
and Carolina Sunset Development, LLC,
*Plaintiffs,*

*v.*

LINN COUNTY ASSESSOR,
*Defendant*,

*and*

DEPARTMENT OF REVENUE,
*Defendant-Intervenor.*

(TC 4996)

Plaintiffs (taxpayers) appealed denial of property tax exemption for previously exempt low-income housing projects in Linn County following a change of ownership of the properties. Granting Defendant-Intervenor (the department)'s cross-motion for summary judgment, the court ruled that pursuant to statutes and case law, exemption from property tax is not appropriate where, as here, lease agreements granted the residents of the properties an exclusive possessory interest in each apartment for use as private residences, thus taxpayers' use of the subject properties was not exclusive, and an arguably charitable institution cannot qualify for exemption when the particular purpose motivating the charitable institution's activities allow the subjects of its charity to use property for their own purposes.

Oral argument on cross-motions for summary judgment was held March 21, 2012, in the courtroom of the Oregon Tax Court, Salem.

David L. Canary, Garvey Schubert Barer, Portland, filed the motion and argued the cause for Plaintiffs (taxpayers).

Rochelle A. Nedeau, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant-Intervenor (the department).

Decision for Defendant-Intervenor rendered February 27, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This case comes before the court on the motion of Plaintiffs Corvallis Neighborhood Housing (CNHS) and Carolina Sunset Development LLC (Carolina LLC) for summary judgment and the cross-motion for summary judgment of Defendant Linn County Assessor (the county) and Defendant-Intervenor Department of Revenue (the department). In this order Plaintiffs are collectively referred to as "taxpayers" and Defendant and Intervenor are collectively referred to as "the taxing authorities." The tax year at issue is 2010-11.

## II.   FACTS

The facts stated below largely reflect the Stipulation of Facts and Stipulated Exhibits provided to the court by the parties. During the 2010-11 tax year, taxpayer CNHS was an IRC section 501(c)(3) nonprofit corporation.[1] Taxpayer Carolina LLC was not an IRC section 501(c)(3) corporation. However, CNHS is the sole member of Carolina LLC and, as was stated above, CNHS is a 501(c)(3) corporation.

Taxpayers provide housing for low-income individuals and families in Linn County and Benton County. The low-income housing projects at issue in this case are all located in Linn County.

Prior to 2006, taxpayer operated primarily in Corvallis and other areas of Benton County. However, in 2006 Linn County Affordable Housing (LCAH), a low-income housing provider in neighboring Linn County, was forced to wind down due to financial difficulties and transferred four low-income housing projects to CNHS. Two of these projects were located in the city of Lebanon and two in the city of Sweet Home. Three of these projects were multi-family rental apartment buildings. The fourth consisted of six single family rental homes located in Sweet Home. As of July 1, 2010, CNHS owned only the single family homes directly. The three apartment complexes were owned by Carolina LLC, which was in turn wholly owned by CNHS. These properties are referred to in this order collectively as "the subject properties."

---

[1] All references to the Internal Revenue Code (IRC) are to the 2008 edition.

The construction capital for the subject properties included government funding that requires the subject properties to be reserved for low-income households. In some instances these funds were conditioned upon, among other things, recording rent restrictions and limits on tenant income as covenants that run with the land. Most of the funding sources relied upon by taxpayers required that tenants' household incomes not exceed some prescribed percentage of the Area Median Income, typically below 50 to 60 percent. Other funding sources relied upon by taxpayers required taxpayers to provide social service programming to tenants. The operating expenses for the subject properties, including debt servicing, were financed in part by rents collected from taxpayers' tenants.

CNHS provides a variety of social services, some aimed specifically at tenants of its low-income housing projects and others aimed at the general public. These services included microbusiness courses, foreclosure assistance, and homeownership classes. Services aimed at the general public were not performed on site at taxpayers' housing projects and taxpayers did not keep records showing whether the tenants of any of their housing projects utilized these services. Taxpayers offered services specific to its tenants at the subject properties, including referrals to other local resources for rent and energy assistance, food and clothing. Other services offered by taxpayers to their tenants included encouraging community safety, after school care and activities for children, senior support services, referrals for dispute resolution, financial planning, life management skills, and community event sponsorship.

Under the lease agreement used by taxpayers during the tax year at issue, taxpayers granted to its residents the right to use a given housing unit as a residence in consideration for payment of rent. Taxpayers reserved the right to enter leased premises in emergencies or upon 24-hours' notice to perform maintenance or other tasks aimed at ensuring the serviceability of the premises. Otherwise, tenants appear to have had the right to exclude others, including agents or employees of taxpayers, from their own leased dwellings.

While in possession of LCAH, all four of the subject properties were exempted from property tax under ORS 307.130.[2] In December of 2009 the owner of record in the Linn County property records for the three multifamily projects acquired by Carolina LLC changed to reflect their acquisition by Carolina LLC. This record change prompted the county to review the exemption given to these properties and to disqualify the multifamily projects owned by Carolina LLC from property tax exemption for the 2010-11 tax year. After further review of the county's records, the county also disqualified the single family homes in Sweet Home that CNHS owned directly from property tax exemption for the 2010-11 tax year. Taxpayers appealed these disqualifications to the Oregon Tax Court.

This case was specially designated for hearing in the Regular Division by an order entered on March 9, 2011. The parties agreed to proceed through cross-motions for summary judgment under Tax Court Rule (TCR) 47 and have provided the court with a fairly extensive stipulation of facts. The parties have also stipulated to many of the exhibits in the record before the court. Nonetheless, the parties have also each provided declarations and exhibits in support of their motions to which their opposing party has not stipulated. The taxing authorities object to the admissibility of several of the affidavits submitted by taxpayers in support of their case. These objections are dealt with in the "Analysis" section below.

At oral argument on these cross-motions, the court determined that there existed evidence in the record from which a reasonable finder of fact could determine that taxpayers do not rent units in their housing projects at below market rents and that this prevented the court from granting summary judgment on the question of whether taxpayers' activities involve the type of "gift or giving" required of a charitable institution under ORS 307.130. The court is of the opinion that the record likewise does not mandate a ruling that taxpayers' activities lacked the required degree of gift or giving. For reasons that will be stated below, the motion of the taxing authorities is likewise denied with

---

[2] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

respect to "gift or giving." However, other issues raised by the parties in their briefing and at oral argument are ripe for summary judgment on the record before the court and are dispositive.

## III.  ISSUE

The issue is whether the subject properties are exempt from property tax under ORS 307.130.

## IV.  ANALYSIS

A.  *The Admissibility of the Declarations Submitted by Taxpayers*

As a preliminary matter the court will address the objections the taxing authorities raise as to the admissibility of certain affidavits that taxpayers have presented in support of their motion for summary judgment. The taxing authorities argue that these affidavits contain statements that would not be admissible at trial and therefore, pursuant to TCR 47 D, cannot be used to support taxpayers' motion for summary judgment. The taxing authorities' objections primarily fall under the headings of relevance, lack of foundation, and hearsay.[3] Because of the alleged pervasiveness of these defects, the taxing authorities have declined to identify specific inadmissible passages.

There may or may not be merit to the objections of the taxing authorities, but their method of presenting these objections is self-defeating. Where an objection is offered to a whole document—as opposed to some discrete part of the document—and the document is found to contain material that does not fall within the ambit of the objection, the objection must fail. *See Brown v. J.C. Penney Co.*, 297 Or 695, 688 P2d 811 (1984). The court has examined each of the affidavits submitted by taxpayers and is of the opinion that while some of the affidavits contain objectionable material, each of the affidavits and attached documents likewise contain

---

[3] The taxing authorities further object to the declaration of Tad Everhart on the basis that Everhardt is an attorney representing taxpayers in this case and his declaration contains substantive details about the development and financing of the properties at issue in this case. The rules of professional conduct typically forbid an attorney from testifying in a case if that attorney is also representing a party in that case. *See* Oregon Rules of Professional Conduct 3.7. However, the Oregon Rules of Evidence do not address this matter.

some clearly admissible material. For this reason the court overrules the objection of the taxing authorities.

B. *Whether the Subject Properties are Exempt under ORS 307.130*

This case involves real property owned by two distinct entities, CNHS and Carolina LLC. However, ORS 307.022 provides that where, as here, a limited liability company is owned by a nonprofit corporation, the property of the limited liability company is exempt to the same extent as the property of the nonprofit is exempt, if at all. Therefore, if CNHS qualifies for exemption under ORS 307.130, then the properties owned by Carolina LLC likewise are exempt.

ORS 307.130 reads in pertinent part:

"(2)    *** the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a)    *** only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

Oregon courts look to answer two main questions in determining whether property falls within the "charitable institutions" exemption of ORS 307.130. First, whether the entity seeking the exemption is a "charitable institution," and second, whether the property is "actually and exclusively occupied or used in the *** charitable *** work carried on" by the organization. Taxpayers argue that they are charitable institutions and that the subject properties are either occupied or used by taxpayers exclusively in furtherance of their charitable work—specifically, providing housing for individuals and families that could not otherwise afford housing, and doing so on a not-for-profit basis. The taxing authorities argue that taxpayers are not charitable institutions and that taxpayers do not exclusively occupy or use the subject properties.

In deliberating on these cross-motions, the court bears in mind that it must put into effect the intentions

of the legislature, if those intentions can be discerned. *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 95 (2002). However, where the court cannot discern legislative intent, ambiguities in the text of a statute must be construed against the taxpayers. *Id.* This is consistent with the rule that a party claiming exemption under a statute is required to bring itself within the terms of the statute. *Id.*

Because the parties have chosen to proceed via motions for summary judgment, each party is entitled to succeed only where there are no questions of material fact and one party or the other is entitled to prevail as a matter of law. TCR 47 C. However, because taxpayers must satisfy each of the requirements of ORS 307.130 to qualify for exemption, in order to survive the motion of the taxing authorities for summary judgment, taxpayers must at a minimum show that there are material questions of fact with regard to every one of the requirements of the statute. If the taxing authorities' motion is granted as to any one of the requirements of the statute, then taxpayers simply cannot qualify for exemption under ORS 307.130.

On any given factual question, summary judgment must be denied if there is any evidence in the record from which a reasonable finder of fact, granting all reasonable inferences to the party opposing summary judgment, could find in favor of the party opposing summary judgment. TCR 47 C.

1.   *Whether CNHS is a "charitable institution"*

Oregon courts look to three sub-questions to determine whether a given organization is a '"charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon Pub. Def. Svcs. v. Dept. of Rev.*, 312 Or 82, 89, 817 P2d 1292 (1991).

On the first factor, the taxing authorities argue that taxpayers' primary purpose was housing, rather than charity. The court does not consider this argument well taken.

The court does not understand the requirement that an entity seeking exemption under ORS 307.130 have charity as its "primary, if not sole, object" to mean that the entity must exist to pursue only some abstract notion of "charity." This is supported by past cases of this court and of the Oregon Supreme Court. For example, in *SW Oregon Pub. Def. Svcs.* the Supreme Court ruled that an organization providing legal representation to indigent criminal defendants was charitable, even though the obvious purpose of that organization was to provide legal services to indigent clients, not just abstract "charity." 312 Or at 94. Likewise, in several instances this court has ruled that hospitals and adult foster care facilities can be charitable institutions for purposes of ORS 307.130, even though those organizations exist to provide specific services and not simply some broadly construed notion of "charity." *See*, *e.g.*, *Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305 (1992) (hospital); *Rigas Maja, Inc. v. Dept. of Rev.*, 12 OTR 471 (1993) (adult foster care facility).

Rather, what "charity as primary, if not sole, object" stands for is that, as the first step in its analysis, the court must determine whether an organization seeking exemption exists to enrich the private individuals who own or operate it, or whether it exists to benefit society at large without an eye to private gain. *See Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 427, 723 P2d 320 (1986).

In past cases Oregon courts have regarded an allegedly charitable institution's articles of incorporation and bylaws as *prima facie* evidence of the purpose of the organization. *Id.* The articles of incorporation of CNHS, as amended and in effect during the 2010-11 tax year, state:

> "The Corporation is formed exclusively for charitable purposes to serve low and moderate income people through community development/neighborhood revitalization needs and community self-help activities within Linn and Benton Counties, State of Oregon. This purpose includes the provision of safe, decent, safe, [*sic*] sanitary, affordable housing for persons of low and moderate income.
>
> "* * * * *

"No part of CNHS' earnings or property shall inure to the benefit of any founder, contributor, member, director, officer, individual, firm or corporation."

The purpose professed in CHNS' articles of incorporation—to provide housing for needy individuals and families—indisputably answers an important social need. The taxing authorities dispute that taxpayers' mission is charitable, but they do not dispute that CNHS was formed to provide housing to low-income households and to carry out that purpose without private benefit to the individuals controlling CNHS. Rather, the taxing authorities rely on the decision of the Supreme Court in *Friendsview Manor v. Tax Comm.*, 247 Or 94, 420 P2d 77 (1967) to argue that an organization providing housing cannot be considered charitable if the recipients of that housing have to pay for it. *Friendsview Manor* is distinct from the case at bar, however, because the retirement home at issue in that case was merely an exercise in self-help.

The retirees in *Friendsview Manor* collectively put up the capital to establish and operate their retirement home. 247 Or at 96. In a sense these retirees stood in the position of principals in a corporate entity that they, in turn, personally extracted benefits from in the form of housing. *Friendsview Manor* thus does not stand for the proposition that housing that is paid for through, among other things, financial contributions from tenants cannot be charitable *per se*. Rather, it makes clear that a charitable entity for purposes of ORS 307.130 cannot exist primarily to benefit specified private individuals. *Id.* at 101-02.

Because taxpayers' purported mission answers an important need of society at large, taxpayers professed not to be doing so on a for-profit basis, and the taxing authorities have not introduced evidence to counter either of taxpayers' assertions, the court concludes that taxpayers meet the first of the three charitable classification factors.

With respect to the second charitable classification factor, the taxing authorities argue that taxpayers' operations did not further taxpayers' charitable goals because taxpayers' operations lack an aspect of "gift or giving." The taxing authorities' argument in this regard conflates the

second and third factors of the analysis laid out above.[4] While there is a dispute between the parties as to whether taxpayers' operations were charitable for purposes of ORS 307.130, there is no dispute that taxpayers operated low-income housing projects. The parties have also stipulated that none of taxpayers' founders, employees, or officials obtained any profit, private advantage, or benefit from the operations of taxpayers. The court is satisfied that taxpayers' activities contributed to the specific goals identified in CNHS' organizing documents. Inasmuch as the court has ruled that those goals were charitable, taxpayers satisfy the second charitable classification factor.

The parties expend considerable attention in their briefing on the third charitable classification factor—the presence in taxpayers' activities of "gift or giving" sufficient to justify characterizing taxpayers as charitable institutions. At oral argument on these cross-motions for summary judgment, the court denied the motion of taxpayers with regard to this element because despite taxpayers' evidence to that effect, the taxing authorities had produced evidence from which an adverse conclusion could reasonably be drawn. For much the same reason that the court denied taxpayers' motion at oral argument, the court here also denies the motion of the taxing authorities on the issue of the presence or absence of "gift or giving." The affidavits and exhibits provided by taxpayers in support of their motions contain data from which a reasonable fact finder could conclude that taxpayers' rents were below the market rates for similar properties during the 2010-11 tax year.

2.  *Whether the subject properties are "exclusively occupied or used" in the charitable work of taxpayers*

Taxpayers argue that even though they leased units in the subject properties to individuals who used them as private residences, the projects were nonetheless exclusively used for taxpayers' charitable purpose of providing housing

---

[4] The conflation is understandable. The elements of the "charitable institution" test evolved over numerous cases and neither this court nor the Supreme Court have always articulated the elements precisely as laid out in *SW Oregon Pub. Def. Svcs. See*, *e.g.*, *Dove Lewis*, 301 Or at 427-428.

for low-income households. The taxing authorities, for their part, do not appear to dispute that taxpayers did, indeed, lease units in the subject properties only to low-income individuals, in accordance with the purpose claimed in the articles of both taxpayers. However, the taxing authorities argue that because the residents' lease agreements granted the residents an exclusive possessory interest in each apartment for use as private residences, taxpayers' use of the subject properties is not exclusive. In short, the issue is whether property owned by an arguably charitable institution can qualify for exemption when the particular purpose motivating the charitable institution's activities requires allowing the subjects of its charity to use the property for their own purposes.

Both this court and the Supreme Court have dealt with the question of whether the granting of a possessory interest in real property to another can be consistent with the exclusive use or occupancy required by ORS 307.130. In *YMCA v. Dept. of Rev.*, 268 Or 633, 522 P2d 464 (1974), the Supreme Court determined that property leased by the downtown Portland YMCA to the US Department of Labor's Job Corps as administrative office space remained exempt despite the leasehold given to the Job Corps.[5] *YMCA*, 268 Or at 637. Several factors contributed to the court's decision, but most significant was the fact that the Job Corps had joined with the YMCA and the University of Oregon in a collective effort to provide services to Job Corps enrollees during periods of weekend leave. *Id.* at 638-39. The court found that this program contributed to the charitable objectives espoused by the YMCA and that it was material to the success of the program to have Job Corps administrative staff in the YMCA building to supervise the Job Corps enrollees while they were using the facilities and services provided by the YMCA as part of the program. *Id.*

---

[5] The court's opinion in *YMCA* also concerned certain property used to provide temporary housing to draftees under a contract with the US Department of Defense. The court concluded that this property remained "exclusively occupied or used" for the YMCA's charitable purposes. However, that aspect of *YMCA* is distinct from the case at bar in that the YMCA did not grant any interest in its property to the draftees and the draftees only occupied the housing provided by the YMCA on a transient basis.

This court articulated its understanding of the teachings of *YMCA* in *Albany Gen. Hospital v. Dept. of Rev.*, 6 OTR 446 (1976), *aff'd*, 277 Or 727, 561 P2d 1029 (1977). In that case, this court held that property owned by Albany General Hospital but leased to Linn County for use in county public health programs was not exempt because, while the activities of Linn County on the leased premises were health related, they were independent of the activities of the hospital. *Id.* at 450. The court concluded that because the county was not acting as a "joint actor" with the hospital, the premises leased to the hospital were not exclusively used or occupied for the charitable purposes of the hospital and were therefore not exempt. On appeal the Supreme Court upheld the decision of this court in *Albany Gen. Hospital* in a *per curiam* decision. 277 Or at 729.

Other decisions of this court have found for exemption when the possessor is an agent of a charitable institution engaged in work necessary to the purposes of the institution. For example, in *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 343 P2d 893 (1959) the Supreme Court held that on-campus quarters used as private residences by the school's superintendant of buildings and the school's cafeteria supervisor were exempt because the presence of those individuals on campus on a round-the-clock basis permitted them to carry out "essential functions" related to the school's responsibility for the health, safety, and comfort of students resident on campus. 218 Or at 30-31. In *Lewis & Clark College v. Commission*, 3 OTR 429, 432 (1969), this court held that the residence of the president of the college—a building owned by the college but about two miles off campus—was likewise exempt because the president used his residence "primarily for the benefit of the college" and that such use was "reasonably necessary for the fulfillment of the functions of the college."

The upshot of these cases is that a grant of a possessory interest in property owned by a charitable institution to another person or entity violates the exclusive occupation or use requirement of ORS 307.130 unless the lessee's use or occupation of the property actively contributes to the purposes of the charitable institution in such a way that the

lessee can be viewed as a partner or "joint actor" with a charitable, public, or governmental institution in accomplishing its charitable purposes.[6] *Albany Gen. Hospital*, 6 OTR at 450. Likewise, if the possessor is actively engaged in the work of an exempt institution and the possessor's occupation of the leased premises enhances the ability of the possessor to do the work of the institution, then "exclusive occupancy or use" is not impaired by the fact that the possessor is also using the property for purposes other than those strictly related to the mission of the charitable owner. If, however, owner and possessor pursue separate purposes—even if those purposes are substantially similar despite being pursued independently of one another, then exclusive use of the property at issue for the charitable purpose of the owner is lost. *Id*. This would also be the result where, as in the case at bar, an interest in property is given to persons who are not "joint actors" or agents actively engaged in the charitable work of the owner, but are rather the passive recipients of the owner's charity.

The court's decision in *Albany Gen. Hospital* prompted the legislature to adopt ORS 307.166, permitting property owned by an exempt entity but leased to another entity exemption from property tax only if the lessee is also an "institution, organization or public body that is likewise granted exemption or the right to claim exemption for property under a provision of law contained in this chapter." ORS 307.166 is not applicable here, however, because taxpayers' tenants are private individuals—a category not listed in the statute—and because those tenants do not purport to be themselves engaged in any charitable work.

The legislature has also, on numerous occasions, taken up the question of providing relief from property taxes for owners of rental housing for low-income persons. The taxing authorities, in their briefing, refer the court to two sets of statutes—ORS 307.540 to 307.548 and ORS 307.515 to 307.537—that offer partial exemptions from property

---

[6] The court uses the language of lessor and lessee here purely for convenience. The important factor is the grant by the owner of property of a possessory interest in its property to another individual or organization, whether or not that interest is styled as a leasehold.

taxes levied by county and local governments for providers of low-income housing. Taxpayers rightly note that the existence of these statutes does not necessarily bar taxpayers from obtaining full exemption from property tax by way of ORS 307.130. However, the existence of these alternative routes to relief from property tax does suggest that the legislature recognized the need for low-income housing of the type provided by taxpayers, but also believed that the type of relatively long-term, low-income housing that taxpayers and similarly situated institutions provide did not fit the contours of ORS 307.130—contours construed by this court and by the Supreme Court in the cases discussed above.

There is support for this view in the legislative history of ORS 307.540 to 307.548. ORS 307.540 to 307.548 were adopted by the legislature as Senate Bill 503 (SB 503) during the 1985 legislative session. The written testimony of Debbie Wood, a housing policy analyst with the State Housing Council and supporter of SB 503, contains the following passage:

> "It is widely assumed that the kinds of [low-income housing] projects *** that I have described to this committee are tax exempt. Unfortunately, this is not the case. The housing projects that are not given specific statutory exemption from taxes are not covered under the general tax exemptions for charitable organizations."

Counsel for taxpayers correctly points out that this passage from Wood's written testimony does not occur in the audio recording of Wood's oral testimony before the legislature. The court does not consider the omission material, however. Whatever its form, there is no question that the statement was in the record before the legislature. Given this witness' expertise in questions of housing and prominence in supporting SB 503, the court gives her written testimony considerable weight.

Taxpayers rely primarily on past cases of this court and of the Supreme Court where property used to provide housing to needy people has been found to be exclusively used for a charitable purpose. In particular, taxpayers rely heavily on the decision of this court in *Rigas Maja, Inc. v. Dept. of Rev.*, 12 OTR 471 (1993). In that case the court

found that property used as an adult foster care facility was exempt under ORS 307.130. However, that case is distinct from the case at bar because exclusive use or occupancy does not appear to have been at issue. That opinion does not discuss at all whether the elderly individuals residing in that adult foster care facility had a possessory interest in the property or were simply allowed to live at the facility and receive needed care in exchange for a fee.[7] Moreover, the court in that case stated its understanding that residents in adult foster care often require assistance with basic living functions like eating, bathing, and dressing. *Id.* at 472. The particular residents at issue in *Rigas Maja* also required 24-hour supervision by an on-site caregiver. *Id.* Providing this level of care and supervision is inconsistent with the full measure of rights that typically attend a possessory interest in property for use as a personal residence, such as the right to exclude others from any given part of the premises.

In contrast, taxpayers' residents clearly have the rights to possess their rented dwellings and exclude others under the terms of the lease agreement used by taxpayers. While taxpayers did and do provide services needed by its tenants, those services do not entail the sort of intimate care and supervision present in *Rigas Maja* or, except under the limited circumstances provided for in the lease agreement, entry into the areas occupied by the residents. The ruling in that case is thus not applicable here.

The court has sympathy for the position of taxpayers: that it is taxpayers' charitable purpose to provide housing for low-income individuals and households and that it substantially furthers—and in fact, is essential to—that purpose for taxpayers to allow the residents at the subject properties to use the apartments at the subject properties as personal residences. However, there is no provision of Oregon law providing for an exemption from property tax for property leased to private individuals and used solely as a personal residence. The case law on ORS 307.130 likewise does not go so far as to allow this court to find that taxpayers exclusively use or occupy the subject properties

---

[7] A fee that the court determined to be well below market rates for the kind of housing and care provided. *See Rigas Maja, Inc.*, 12 OTR at 474-75.

where the residents are neither agents nor partners of the institution occupying the premises in furtherance of their work for or with the institution but have, with only limited exceptions, exclusive possession of the property. Other statutory provisions do exist, however, and it is to those that taxpayers must look.

For these reasons the court concludes that taxpayers' housing projects are not exempt under ORS 307.130.

### V.    CONCLUSION

Now, therefore,

IT IS ORDERED that the motion of Plaintiffs is denied and the cross-motion of Defendant and Defendant-Intervenor is denied in part, but granted as to the issue of exclusive occupation or use.