IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

PROSPECT COMMUNITY CLUB,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀TC-MD 160267R
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JACKSON COUNTY ASSESSOR,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀)⠀⠀**FINAL DECISION[1]**

Plaintiff appeals the denial of a property tax exemption for property identified as Account 10513560 (subject property) for the 2016-17 tax year. A trial was held in the Oregon Tax Court on December 9, 2016. Jennifer E. Nicholls, attorney, represented Plaintiff. Susan Kiefer (Kiefer) testified as a witness on behalf of Plaintiff. Judy Hanratty (Hanratty), exemption specialist for the Jackson County Assessor's Office, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 11 were received without objection. Defendant's Exhibits B through E were received without objection. Defendant's Exhibit A was received in part after objection.

## I. STATEMENT OF FACTS

Plaintiff is a community club in the unincorporated community of Prospect, Oregon, which has a population of less than 1,000 people and is located in Jackson County. (Ptf's Ex 11 at 3.) Plaintiff has been incorporated in Oregon since 1947, and the Internal Revenue Service has recognized it as a 501(c)(3) organization, exempt from Federal income tax, since 2004. (Ptf's Ex 1 at 3; Ex 4 at 1.) Plaintiff's 2004 amended Articles of Incorporation state that the

---

[1] The court granted Plaintiff's appeal in its Decision, entered May 23, 2017. That Decision is incorporated in this Final Decision. Plaintiff filed its Statement for Costs and Disbursements (Statement) on June 2, 2017, requesting an award of costs and disbursements totaling $334.85. Defendant did file a response to Plaintiff's Statement. Upon consideration, the court grants Plaintiff's request for costs and disbursements. *See* Tax Court Rule-Magistrate Division (TCR-MD) 16.

corporation "is organized exclusively for charitable, religious, educational, and scientific purposes."[2] (Ptf's Ex 2 at 1.) Plaintiff's 2013 amended bylaws state that the corporation's purpose is to provide "a venue for the community to organize and develop educational and recreational activities for adults and children." (Ptf's Ex 3 at 1.)

Plaintiff's bylaws state that "membership in the corporation shall consist of all persons eighteen (18) years of age or over residing or employed in the area serviced by the Prospect Post Office." (Ptf's Ex. 3 at 4.) The bylaws require annual membership dues from each member. *Id.* Kiefer testified that the dues are $5 per member. However, she testified that the club does not actively collect dues and that the dues are not considered a significant source of revenue for the club. Kiefer also stated that neither membership nor payment of membership dues is a requirement to participate in Plaintiff's activities or to use the subject property, a community hall ("the Hall"). The benefit for members who pay dues is discounted rental rates, she stated. Of the distinction between club members and members of the community at large, Kiefer testified that "[s]ince everyone who's a resident is technically a member of the club, it's not entirely clear to me how things work."

Volunteers built the Hall in the 1950s to serve as a gathering place for community events. (Ptf's Ex. 8.) Kiefer testified that she is a member of Plaintiff's organization and a volunteer at the Hall. Kiefer testified that an old Prospect family donated the property for the Hall for the

---

[2] Prospect's articles of incorporation were amended in 2004, the same year that the corporation applied for and received its 501(c)(3) classification for federal tax exemption. Its original 1947 articles of incorporation, valid until 2004, stated that Prospect's purpose was, in part, as follows:

"To become the official sponsor of, to sanction and promote educational pursuits of all kinds and to pursue charitable pursuits of any and all kinds and community recreation; to conduct social bazars, dances, entertainments of all kinds for the purpose of raising funds to be used in the said educational and charitable pursuits; to cultivate social intercourse among its members and to [illegible] the principles of charity, brotherly love, and fidelity, and to promote the welfare and enhance the welfare of its members. To promote the welfare of the community surrounding the town of Prospect, Oregon, and to promote all civic purposes which may be beneficial to the City of Prospect * * *." (Ptf's Ex 1 at 1.)

express purpose of becoming a community gathering place. Kiefer testified that the ownership and operation of the Hall is Plaintiff's primary activity, though the organization also hosts an annual fundraising Prospect Jamboree and Timber Carnival off-site. Kiefer said that the Hall is equipped with a recently renovated commercial kitchen, two restrooms, and storerooms, but that it is otherwise much like a barn. She also testified that the building has a metal roof and no insulation, and is in need of renovations.

Plaintiff regularly rents the Hall to individuals for private events such as weddings, baby showers, birthday parties, club meetings, and other social gatherings. Plaintiff charges rental fees ranging from $15 to $180, depending on the renter's needs and historical precedents. (Ptf's Ex. 5.) Kiefer testified that there is no comparable facility in or near Prospect that is similarly equipped and available for hosting events. Kiefer testified that about a year ago, she investigated rental charges for halls in the area, and the nearest venue in Shady Grove charges $300 for a full day rental. Kiefer testified that Plaintiff charges $75 for 12 hours for non-members and $50 for members.

The Hall is frequently used at no cost for certain events, including funerals, memorial services, and on one occasion, a fundraiser to benefit the family of a child diagnosed with cancer. (Ptf's Ex. 5.) The United States Department of Agriculture has used the Hall to present forest fire information sessions, and the local library has hosted civic discussions there. (*Id.*; Ptf's Ex 11 at ¶ 3.)

Plaintiff's organization also uses the Hall for occasional meetings of its volunteer board. (Ptf's Ex. 5.) In addition, Kiefer testified, Plaintiff organization hosts its own events at the Hall, including a weekly meal for senior citizens and special holiday dinners for Thanksgiving and Christmas. Kiefer said volunteers prepare the meals, which are offered to the public for free, but

Plaintiff accepts donations from participants. Kiefer testified that Plaintiff never discriminates based on race, color, or creed. Kiefer testified that advertisements for the meals are displayed at the local post office and distributed to a voluntary email list, and that no one is turned away from these meals due to an inability to donate. Kiefer testified that Plaintiff also offers monthly dinners for families, and charges $7 or $8 per adult for those meals. Kiefer testified that any receipts from meal fees or lunch donations are used to cover the costs of preparing the meals and heating the poorly insulated building.

Kiefer testified that most of the money Plaintiff receives through rental fees, meal donations, and fundraising efforts are used for operational expenses like utilities and maintenance of the aging building, and that Plaintiff only raises funds "in order to continue to exist." Kiefer testified that Plaintiff receives some donations throughout the year, but that these donations are not enough to cover the costs of operating the facility. Plaintiff's fundraising efforts include an annual Carnival and Jamboree, at which it sponsors the children's games. (Def's Ex. E at 6). Kiefer said these fundraising activities do not occur at the Hall. Kiefer testified that the Carnival features food vendors and a beer garden, and that receipts from the entry fee of $5 are used to pay for carnival prizes. Kiefer said Plaintiff sponsors an annual $500 scholarship with proceeds from the Carnival and uses any additional funds to maintain the Hall. Kiefer testified that several years ago, Plaintiff hosted bingo at the Hall, but that Plaintiff no longer hosts the games and does not intend to do so in the future.

Plaintiff has historically enjoyed a charitable exemption from property taxes. In May 2016, Defendant denied Plaintiff's renewal application for exemption, stating that:

> "Charity is not the primary, if not sole, objective of the Prospect Community
> Club. Fund raising activities are not charitable use of the property. The courts
> define these activities as 'destination of income' and conclude that raising money
> to do charity is not a charitable use of property."

(Ptf's Ex. 11 at 1.)  Hanratty testified that Defendant made its determination based on old Facebook posts made by Plaintiff indicating the nature of some of Plaintiff's regular activities at the time, including hosting bingo.  Hanratty testified that the outdated posts were "all [Defendant] found" on which to base a judgment.  Hanratty testified that Defendant also relied on the language of Plaintiff's 1947 Articles of Incorporation and its amended 2004 Articles of Incorporation, finding neither of the statements to "isolate the charitable purpose."  Although Hanratty conceded that Plaintiff organization "do[es] wonderful things for their community," she testified that Defendant could not conclude that Plaintiff's work was primarily charitable.

## II. ANALYSIS

The issue presented in this appeal is whether Plaintiff is entitled to property tax exemption under ORS 370.130(2) as a "charitable institution."[3]

All real property in Oregon is taxable unless it is specifically exempted.  ORS 307.030. The Oregon Revised Statutes provide a property tax exemption for certain charitable organizations on "such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."  ORS 307.130(2)(a).  The court is guided by the principle that "[t]axation is the rule and exemption from taxation is the exception."  *Dove Lewis Mem'l Emergency Veterinary Clinic, Inc. v. Dept. of Rev.* (*Dove Lewis*), 301 Or 423, 426-27, 723 P2d 320 (1986). Property tax exemption statutes are to be strictly but reasonably construed, meaning that the court should give "due consideration to the ordinary meaning of the words of the statute and the legislative intent," and should construe ambiguities in favor of the state.  *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 94-95 (2002).  The burden of establishing entitlement to an exemption

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2015 version.

is on the taxpayer claiming the exemption, and the entitlement must be established by a preponderance of the evidence. ORS 305.427.

To qualify for the exemption, an organization must meet three requirements: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving. *SW Oregon Pub. Def. Services v. Dept. of Rev.* (*SW Oregon*), 312 Or 82, 89 (1991); *See also* OAR 150-307-0120-(A)(4)(a)-(d)[4] (incorporating these factors). This test is applied to the overall activities of the organization, and not any specific part or operation thereof. *Mercy Med. Ctr., Inc. v. Dept. of Rev.* (*Mercy Med.*), 12 Or Tax 305, 307, 1992 WL 310208, *2 (1992). An organization must meet all three elements to qualify as charitable. *Mazamas v. Dept. of Rev.*, 12 OTR 414, 415 (1993).

A. *The Organization*

1. *Charitable purpose*

At the outset, an organization seeking a charitable exemption under ORS 307.130 must prove that it is charitable by having "charity as its primary, if not sole, object." *SW Oregon*, 312 Or at 89. This inquiry looks to the character of the organization. *Dove Lewis*, 301 Or at 427. The Department of Revenue (the department) has promulgated regulations that offer a framework for, among other things, determining whether an organization qualifies as a charitable organization. In order to qualify, an organization must: be incorporated and organized as a nonprofit corporation; separately account for funds and donations committed to charitable use; not operate for the profit or private advantage of the organization's founders and officials; and

/ / /

---

[4] The court's references to the Oregon Administrative Rules are to the 2016 version, which was renumbered as of September 1, 2016.

require that its assets be used for charitable purposes when the organization dissolves. OAR 150-307-0120-(A)(2)(a)-(e).

Although not dispositive, an organization's articles of incorporation and bylaws can serve as *prima facie* evidence of the character of the organization. *Dove Lewis*, 301 Or at 427; *Found. of Human Understanding v. Dept. of Rev.,* 301 Or 254, 258, 722 P2d 1, (1986) (articles); *Benton County v. Allen,* 170 Or 481, 485, 133 P2d 991 (1943) (articles); *Hamilton v. Corvallis Gen. Hosp. Ass'n.,* 146 Or 168, 171-72, 30 P2d 9 (1934) (articles and bylaws).

Plaintiff's amended Articles of Incorporation state that Plaintiff is "organized exclusively for charitable, religious, educational, and scientific purposes" and that "[n]o part of the net earnings of the corporation shall inure to the benefit of * * * members, trustees, officers, or other private person[s] * * *." The articles also provide for a charitable distribution upon Plaintiff's dissolution. Plaintiff's bylaws state that its purpose is to provide "a venue for the community to organize and develop educational and recreational activities for adults and children." (Ptf's Ex. 3 at 1.) Because Plaintiff is a nonprofit organization and its articles of incorporation and bylaws sufficiently show that charity is its primary object, Plaintiff satisfies the first prong of the *SW Oregon* test.

Plaintiff's stated purpose weighs in its favor, but is not enough to establish a right to exemption under ORS 307.130. *Cascade Raptor Ctr. v. Lane County Assessor*, TC-MD 101269B, WL 4021408 at *4 (Or Tax M Div Sept 12, 2011) (explaining that charities in this state enjoy no inherent right to exemption from taxation (citing *Samaritan Vill., Inc. v. Benton County Assessor* (*Samaritan Vill.*), TC-MD 001064C,WL 25846514 at *8 (Or Tax M Div Jan 23, 2003) (internal quotation marks omitted)).

/ / /

2. *Performance in furtherance of the charitable purpose*

The second prong of the *SW Oregon* test requires an organization seeking exemption to "be performing in a manner that furthers its charitable object." *SW Oregon,* 312 Or 82, 89 (1991); *See also* OAR 150-307-0120-(A)(4)(a)-(d). In other words, the court must determine whether Plaintiff is *actually* charitable by its conduct. *Dove Lewis*, 301 Or at 428; *see also* OAR 150-307-0120-(A)(2)(b) (providing that "whether a corporation is a charity is to be determined not only from its charter, but also from the manner in which it conducts its activities").

While no particular definition of "charity" has been adopted in this context, courts have interpreted this requirement to mean that the organization's activities must be "for the direct good or benefit of the public or community at large." OAR 150-307-0120-(A)(4)(b). A charitable institution's "dominant purpose must be doing good to others rather than being organized for the convenience of those who use its services." *U.S. Atheists v. Multnomah County Tax Assessor*, TC-MD 001108E, WL 34148929 at *3 (June 18, 2001) (citation omitted; internal quotation marks omitted). The department clarifies this point as follows:

> "Public benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members is not a qualifying charity. For example, a rifle club formed primarily for the pleasure of its members also provides safety information and instruction. Since the club's primary purpose is not to provide a direct benefit to the public, its property is not exempt."

OAR 150-307-0120-(A)(4)(b); *see also*, *Tivnu: Bldg. Justice v. Multnomah County Assessor*, TC-MD 150486R, WL 6752345 at *5 (Nov. 15, 2016). This rubric allows courts to accept a generous definition of what qualifies as charity. *Lebanon Cmty. Found., Inc. v. Linn County Assessor*, TC-MD 011005A, WL 1591920 at *2 (July 18, 2002) (finding that charity was not limited to relieving pain, alleviating disease, or removing constraints).

/ / /

To determine whether Plaintiff's activities further its charitable purpose, the court must ask whether the organization conducts itself in a way that offers a direct good to the community at large, or whether its activities serve only a select membership. In this case, Plaintiff draws a distinction between "members" and dues-paying members. Plaintiff's bylaws illustrate this distinction, defining its "members" as "all persons * * * residing or employed in" Prospect (regardless, it seems, of any payment to or participation in Plaintiff organization). (Ptf's Ex. 3 at 4.) However, as Kiefer testified, only the members who pay annual dues to Plaintiff enjoy the added benefit of a discount on rental fees for hosting private events at the community Hall.

In the rifle club example previously mentioned, the organization presumably hosts private, members-only events as well as safety trainings that are open to and benefit the public. The events for the public benefit are mere "by-products" of the organization's primary purpose of operating a private rifle club. In the present case, the fact that paying dues to Plaintiff organization is not a requirement to use the Hall or to participate in any activities Plaintiff conducts at the Hall distinguishes Plaintiff from the aforementioned rifle club. In addition, Plaintiff admittedly makes no real effort to collect dues from its members or keep records of dues paid, and, as Kiefer testified, Plaintiff tends to use the term "members" to refer to all Prospect residents, even those who have not paid dues to Plaintiff.

The distinction between dues-paying members and community members could, in some cases, defeat the taxpayer's charitable purpose; however, here it appears to be quite negligible. Kiefer testified that Plaintiff advertises its weekly lunch events by posting fliers or menus at the local post office, indicating that Plaintiff intends to encourage any member of the public, not just for its dues-paying members, to attend its events at the Hall. In addition, Plaintiff allows anyone to use the Hall at no charge for funerals and memorial services, and does not discriminate on the

basis of dues paid for the opportunity to rent the Hall for other events. Defendant concedes that Plaintiff "do[es] wonderful things for the community," not just its members. Based on this evidence, the court finds Plaintiff's activities are conducted for the benefit of the community at large, and thus Plaintiff satisfies the second prong.

3. *Gift or giving*

The third and final prong of the *SW Oregon* test requires the organization seeking an exemption to show that its "performance * * * involve[s] a gift or giving." *SW Oregon,* 312 Or at 89. This determination is crucial to the analysis because the element of gift or giving "is what distinguishes charity from nonprofit." *Samaritan Vill.*, 2003 WL 25846514 at *5 (relying on *SW Oregon*, 312 Or at 89); *Dove Lewis*, 301 Or at 428 (finding that, in analyzing the eligibility of charitable organizations for tax exemption, "the crucial consideration is the element of a gift or giving"). *Serenity Lane* makes the test quite simple, stating, "[t]he question is whether individuals other than those who own or operate the institution receive a benefit without any expectation of reciprocity from the recipient." *Serenity Lane, Inc. v. Lane County Assessor* (*Serenity Lane*), 21 Or Tax 229, 242 (2013) (citing *SW Oregon*, 312 Or at 91).

In determining whether the conduct of an organization involves an element of "gift or giving," courts consider a list of probative factors, none of which is dispositive in isolation. *Serenity Lane*, 21 Or Tax at 236; *Methodist Homes, Inc. v. Tax Comm'n*, 226 Or 298, 310 360 P2d 293 (1961). These factors include:

> "(1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed;
>
> "(2) Whether patients or patrons receive the same treatment irrespective of their ability to pay;
>
> "(3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed; and

> "(4) Whether charges are made to all and, if made, are lesser charges made to the poor or are any charges made to the indigent."

*Serenity Lane,* 21 OTR at 236 (citing *SW Oregon*, 312 Or at 87); OAR 150-307.0120-(A)(4)(d)(C). In addition to the factors above, the department recognizes that the "gift or giving" requirement may be met by providing products or services at below-market rates to those in need. OAR 150–307–0120-(A)(4)(d).

Plaintiff argues that its operations involve several types of gift or giving. First, many of its events welcome the public at no cost, including free weekly lunches and holiday meals that are offered in exchange for a suggested donation amount and from which no one is turned away due to an inability to pay. Other nonprofit organizations, like the local school and library, are allowed to use the Hall at no cost. In addition, Plaintiff's activities are staffed by volunteers and supported by significant contributions from community members. In *Samaritan Vill.*, the court noted that donations made to the plaintiff "suggest a public determination that [the plaintiff] is charitable." *Samaritan Vill.*, 2003 WL 25846514 at *7.

Although many of Plaintiff's frequent sponsored activities are open to the whole community at little or no cost, no event rental discount or waiver is offered to those residents unable to pay to rent the Hall for outside events. However, the fact that Plaintiff collects fees for rental of the Hall is not fatal to its "gift or giving" argument. *Samaritan Vill.*, 2003 WL 25846514 at *6 (citing OAR 150-307-0120 (A)(4)(C)(iv)). Plaintiff offers its Hall for rent at rates substantially below market value. Fees collected from paid rentals of the Hall are applied to upkeep and maintenance of the facilities, while receipts from monthly family dinners are primarily used to cover the cost of providing the meals. Kiefer testified that any profits made from these activities are also reinvested in the facilities or in other activities organized by Plaintiff. In *Hazelden Found. v. Yamhill County Assessor*, the court held that such receipts can

be "used to subsidize other activities of the institution, at least as long as those activities contribute to the charitable goal of the institution and are not undertaken for private profit." 21 OTR 245, 252 (2013).

In *Oregon Country Fair v. Dept. of Rev.*, the court analyzed whether a community fair was exempt from taxation under ORS 307.130. The organization hosted an outdoor festival to "promote the arts and crafts, the exchange of ideas, the establishment of a community feeling of unity and enhance an earth-life harmony philosophy." *Oregon Country Fair v. Dept. of Rev.*, 10 Or Tax 200, 205 (1986). The court found that, while the fair's activities were "unquestionably worthwhile and beneficial," they were not charitable under ORS 307.130 because, in part, the fair failed to admit individuals regardless of their ability to pay, and because there were no adjustments made in the charges for the poor or indigent. *Id.* This case is distinguishable from *Oregon Country Fair*, not only because the court over time has expanded its definition of charity, but because Plaintiff has shown sufficient evidence that it opens its Hall and delivers its programming for a price below the market value, and frequently for no cost at all. OAR 150–307–0120(4)(d); *see also Samaritan Vill., 2003* WL 25846514 at \*7 (finding that the plaintiff's performance involved gift or giving based on the facts that the plaintiff charged rents below market value and "outside groups routinely use[d] the facility free of charge"). Plaintiff is generous even to the point of its own detriment, as it barely has the income to maintain its facility. Plaintiff has thus satisfied the third and final prong of the *SW Oregon* test and has established that it is a charitable institution under ORS 307.130(2).

B. *The organization's use of the subject property*

Having determined that Plaintiff is a charitable organization, the court turns to address whether the subject property is "actually and exclusively occupied or used in the \* \* \* charitable

* * * work carried on" by Plaintiff. ORS 307.130(2)(a). The Oregon Supreme Court has construed the term "exclusively" to mean the primary, rather than the incidental use of the property. *Mercy Med.*, 12 OTR at 308 (citing *Multnomah School of the Bible v. Multnomah County*, 218 Or 19, 29, 343 P2d 893 (1959)). If "the activity undertaken on the property substantially contributes to the furtherance of the charity's goals," the property will be exempted. *Young Men's Christian Association v. Dept. of Rev.*, 268 Or 633, 635, 522 P2d 464 (1974). The Oregon Supreme Court has also held that the use of a property should be reviewed in the specific context of the organization's charitable purpose. *Habitat for Humanity of the Mid-Willamette Valley v. Dept. of Rev.*, 360 Or 257, 266, 381 P3d 809, 814 (2016) (finding that because plaintiff organization's charitable purpose was to acquire vacant lots and build housing on those lots for sale to low-income families at below market prices, plaintiff was actually *using* the vacant lots to further its charitable purpose).

Charitable use of the property is distinctly different from charitable use of proceeds derived from use or from fund-raising activities conducted on the property. As Defendant points out, Oregon does not recognize the "destination of income" theory for tax exemption purposes. The department provides an illustrative example: "[U]se of property by a charitable organization as a bingo parlor to raise money for a charitable activity is not an actual charitable use of the property, and does not qualify the property for exemption." OAR 150–307–0120—(A)(4)(a); *see also The Round Up Ass'n v. Umatilla County Assessor*, TC-MD 110865N, 2012 WL 6737188, at *10 (Or Tax Dec. 28, 2012). While Plaintiff admittedly has hosted bingo events in the past, it did not host any bingo events in the tax year in question. It would be unfair to construe intermittent bingo nights in years past as Plaintiff's primary use of the subject property. During the tax year in issue Plaintiff did not, in fact, operate a bingo parlor.

Instead, Plaintiff uses the subject property as a community hall, offering meals and programming for the enrichment of the Prospect community. Plaintiff allows any person to use the Hall at a rate below the market value for such a facility, giving individuals and organizations a place and an opportunity to gather to celebrate, learn, grieve, eat, dance, and be together in a variety of circumstances. The facility is not leased by or used for any commercial purpose, and the incidental profits, if any, are used for the maintenance of the facility and furtherance of the organization's goals. In other words, Plaintiff's primary use of the subject property is sharing it with the community in furtherance of its stated purpose to provide a "venue for the community."

### III. CONCLUSION

After consideration of the evidence and testimony, the court concludes that Plaintiff meets all of the requirements necessary to qualify as a charitable institution within the meaning of ORS 307.130. Accordingly, Plaintiff is entitled to property tax exemption under ORS 307. 130 for the 2016-2017 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.

IT IS FURTHER DECIDED that Plaintiff's request for costs and disbursements is granted. Plaintiff is awarded costs and disbursements in the amount of $334.85.

Dated this ____ day of June 2017.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on June 21, 2017.*