Argued and submitted February 17, affirmed April 12, 2000

# WILBUR RESIDENTS
## FOR A CLEAN NEIGHBORHOOD,
Janet Dixon, Kevin Dixon, Dorothy Branch,
Alice Morh, Glen Byers, Bruce Moore,
Carolyne Moore, Ross Branch and Bob Wanless,
*Petitioners,*

*v.*

## DOUGLAS COUNTY
and Heard Farms, Inc.,
*Respondents.*

(99-081; CA A108519)

998 P2d 794

David A. Bahr argued the cause and filed the brief for petitioners.

David B. Smith argued the cause and filed the brief for respondent Heard Farms, Inc.

Respondent Douglas County waived appearance.

Before Armstrong, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

Petitioners seek review of LUBA's decision affirming the Douglas County hearings officer's approval of respondent Heard Farms, Inc.'s (Heard) application to operate a solid waste disposal site in an exclusive farm use (EFU) zone. We affirm.

Heard's proposal is for a two-stage lagoon operation to process and treat waste that, after treatment, will be reduced to "approximately 3% solids" and will be capable of being "applied by irrigation" as fertilizer on farmland. The processing operation is to be conducted on tax lot 100. Heard has installed a piping system that runs from tax lot 100 to the adjoining "Scardi property," which is described in Heard's application as "adjacent farmland already under contract to receive effluent and biosolids" from Heard. The Department of Environmental Quality (DEQ) has issued a permit to Heard, pursuant to ORS 459.245, for the operations on tax lot 100. DEQ has also issued a permit to Heard, pursuant to ORS 468B.050, allowing dispersal of the waste product on the Scardi property.[1]

The hearings officer granted the application under ORS 215.283(2)(j), which allows as a conditional use on EFU land a

---

[1] As relevant here, ORS 459.245(1) requires a DEQ permit for the operation of a "disposal site." ORS 468B.050 requires a DEQ permit, "specify[ing] applicable effluent limitations," in order to:

"(a) Discharge any wastes into the waters of the state from any industrial or commercial establishment or activity or any disposal system.

"(b) Construct, install, modify or operate any disposal system or part thereof or any extension or addition thereto.

"(c) Increase in volume or strength any wastes in excess of the permissive discharges specified under an existing permit.

"(d) Construct, install, operate or conduct any industrial, commercial, confined animal feeding operation or other establishment or activity or any extension or modification thereof or addition thereto, the operation or conduct of which would cause an increase in the discharge of wastes into the waters of the state or which would otherwise alter the physical, chemical or biological properties of any waters of the state in any manner not already lawfully authorized.

"(e) Construct or use any new outlet for the discharge of any wastes into the waters of the state."

"site for the disposal of solid waste approved by the governing body of a city or county or both and for which a permit has been granted under ORS 459.245 by [DEQ] together with equipment, facilities or buildings necessary for its operation."

As explained in LUBA's opinion, in acting on and approving Heard's application:

"The hearings officer examined the application and noted that it sought approval only for the operations conducted on tax lot 100, not operations conducted on the adjacent Scardi property. The hearings officer also relied upon [Heard's] representation that no approval for land application of the treated waste product was sought in the proceedings before the county. * * * The hearings officer concluded that '[b]ased upon the application, the public notice, and applicant's representation to the Planning Commission, * * * no part of this application seeks or permits applicant to apply treated wastewater or biosolids to any land.' * * * Accordingly, the hearings officer rejected petitioners' arguments that the county must consider the operations on the Scardi property in determining whether the proposed facility complies with applicable approval criteria."

Petitioners advanced several arguments to LUBA and, with slight variations, now repeat them to us. However, we find that only two of petitioners' contentions merit discussion, both of which challenge the hearings officer's refusal to consider the proposed operations on the Scardi property in acting on Heard's application.[2] The first of the arguments is that the contemplated fertilizing operations on the Scardi property are not only part of the overall use that Heard proposes to conduct, but, in petitioners' view, they constitute the essential disposal component of the solid waste disposal operation for which Heard applied and that the county approved.

■    LUBA rejected the argument. It reasoned that the 'solid waste disposal facility' allowed by ORS 215.283(2)(j) is coextensive with the facility for which DEQ grants a permit pursuant to ORS 459.245," and

---

[2] We emphasize that Heard does not take issue with the hearings officer's conclusion that only the operations on tax lot 100 were included in the present application and were approved by the present decision.

"the permit DEQ granted pursuant to ORS 459.245 governs only the treatment facility on tax lot 100. DEQ granted [Heard] a separate permit for land application of wastes on the Scardi property pursuant to ORS 468B.050. * * * The separate permits DEQ granted in this case reflect a bifurcated regulatory structure set forth in the relevant statutes and implementing regulations which separately regulate 'solid waste disposal sites' and land application of treated waste."

We agree with LUBA. We note additionally that ORS 459.005(8) defines "disposal site" for purposes of ORS 459.245 and related statutes to mean

"land and facilities used for the disposal, handling or transfer of, or energy recovery, material recovery and recycling from solid wastes, including but not limited to dumps, landfills, sludge lagoons, sludge treatment facilities, disposal sites for septic tank pumping or cesspool recovery facilities, incinerators for solid waste delivered by the public or by a collection service, composting plants and land and facilities previously used for solid waste disposal at a land disposal site; *but the term does not include* a facility authorized by a permit issued under ORS 466.005 to 466.385 to store, treat or dispose of both hazardous waste and solid waste; *a facility subject to the permit requirements of ORS 468B.050* or 468B.053; a site which is used by the owner or person in control of the premises to dispose of soil, rock, concrete or other similar nondecomposable material, unless the site is used by the public either directly or through a collection service; or a site operated by a wrecker issued a certificate under ORS 822.110." (Emphasis added.)

Hence, the statutory definition of "disposal" and "disposal site" is not as uncomplicated as—or consistent with—petitioners' colloquial understanding that the terms refer only to the last act and place by and on which waste products are disseminated. Rather the definition contemplates all *or parts of* the processing and disposal process. More significantly, the statutory definition expressly excludes locations like the Scardi property, which are subject to the permit requirements of ORS 468B.050, from the sites whose use for solid waste disposal can be allowed *solely* by a permit issued under ORS 459.245 and, derivatively, under ORS 215.283(2)(j). It follows that neither the county nor

LUBA erred in concluding that the proposed operations on tax lot 100 and those on the Scardi property were subject to separate regulatory considerations and that the proposed use on tax lot 100 could be considered for compliance with ORS 215.283(2)(j) independently of whatever use may be planned for the Scardi property. The necessary condition precedent to approval of a disposal site and operations under ORS 215.283(2)(j)—a DEQ permit issued under ORS 459.245—existed in connection with tax lot 100.

■       The second of petitioners' arguments that calls for discussion is that, given the fact that there is an existing "system of irrigation pipes over 1,000 feet in length running from the lagoons on Tax Lot 100 to a distribution system on the Scardi property," the Scardi operations must be considered part of the project that is subject to respondent's application. Petitioner asserts that the application cannot be approved under ORS 215.283(2)(j) without a determination that the pipes, irrigation system and/or the Scardi property itself are "equipment [or] facilities * * * necessary" for the operation of the disposal site.

LUBA also rejected that argument, explaining:

"ORS 215.283(2)(j) allows the county to approve a solid waste disposal site, 'together with equipment, facilities or buildings necessary for its operation.' While petitioners may be correct, as an abstract proposition, that ultimate disposal of the waste treated on tax lot 100 is necessary, land application of wastes on the Scardi property or any particular property is not 'necessary' for operation of the treatment facility that the DEQ permitted under ORS 459.245. As the application contemplates, [Heard] intends to seek the permission of other landowners for land application of treated waste, which will presumably require a separate DEQ permit under ORS 468B.050. However, as petitioners conceded at oral argument, those lands may be located some distance from the treatment facility in different counties and receive the treated waste by truck shipment. In that circumstance, such lands will not be linked to the treatment facility by any 'equipment, facilities or buildings' whatsoever. ORS 215.283(2)(j) allows the county to

authorize necessary infrastructure on the 'site for the disposal of solid waste,' but does not require the county to consider or approve off-site infrastructure that is not necessary for the use permitted under ORS 215.283(2)(j)."

We agree with LUBA's reasoning as far as it goes. In our view, however, the more fundamental problem with petitioners' argument is that it inverts the relevant question. Under ORS 215.283(2)(j), counties may permit qualifying disposal sites *"together with* equipment, facilities or buildings necessary for [their] operation." (Emphasis added.) The statute does not provide, as petitioners' appear to understand it, that an otherwise qualifying disposal site cannot be permitted unless all of the structures and facilities that happen to be located on the same property are part of and necessary to the disposal operations. It is true that any equipment, facilities and buildings on the property that are unnecessary to the operation of the disposal site may not be approved as part of the application for its operation, but that is precisely what the county did *not* do here. It approved only the operations on tax lot 100 and the facilities that directly support those operations. The county did not approve any operations on the Scardi property or any facilities on tax lot 100 that are related to any contemplated dispersal operations on the Scardi property but not to the processing and treatment operations on tax lot 100. As we interpret ORS 215.283(2)(j), the county was not required to consider, let alone make a finding of "necessity," as to those facilities or that site that it did not approve.[3]

It may be that petitioner's unspoken premise is that, if the county is not required to consider and act on the proposed Scardi property operations and the related facilities on tax lot 100 now, then those operations may eventually be commenced without any land use approval by the county. To whatever extent that is petitioners' concern, we need not decide here whether it is correct. The proposed operations on the Scardi property have been permitted by DEQ pursuant to ORS 468B.050. Whether they must *also* be permitted

---

[3] The preceding paragraph does *not* say that, in acting on an application for a disposal site, a county may not consider whether the site contains the necessary facilities and equipment to operate as such.

through a land use decision is, at this point, conjectural. In any event, whether the proposed operations on the Scardi property do or do not require land use approval, the present county decision does nothing to disturb any requirement that may exist. It very expressly does not reach the question, and neither do we.

We are also mindful of the fact that, in some situations, applicants might attempt to manipulate the process by purporting to apply for less than they intend to do, and that a local government theoretically could attempt to conceal the scope of a use that it effectively permits by ostensibly approving something less. However, that did not occur here. The county approved only the disposal site on tax lot 100 and the equipment, facilities and buildings necessary for its operation. It approved nothing else, and it considered everything that it was legally required to consider in connection with the approval that it granted.

Affirmed.