IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HEARD FARM INC.                          )
and RICHARD HEARD,                       )
                                         )
                Plaintiffs,              )        TC-MD 220403R
                                         )
        v.                               )
                                         )
DOUGLAS COUNTY ASSESSOR,                 )
                                         )
                Defendant.               )        **DECISION**

Plaintiffs appeal Defendant's May 24, 2022, notice of disqualification of 27.31 acres of their property from farm use special assessment and imposition of 10 years of additional taxes pursuant to ORS 308A.703(3)(a).[1]  Trial was held in the courtroom of the Oregon Tax Court on March 20, 2023.  Roger Hartman represented Plaintiffs.  Richard Heard (Heard) testified on behalf of Plaintiffs.  Tiffany Podlesnik (Podlesnik), assistant county counsel, represented Defendant but did not present witnesses.  Plaintiffs' Exhibits 1-10 and Defendant's Exhibits A-M were received into evidence without objection.

At the conclusion of trial, the parties agreed to the following schedule: Plaintiffs to file their closing argument and/or legislative history by April 20, 2023, and for Defendant to file the same by May 12, 2023.  The parties' respective post-trial materials were timely filed.  Defendant objected to Plaintiffs' submission of two post-trial evidentiary documents: a Department of Environment Quality (DEQ) permit and a statement from former State Senator Jeff Kruse regarding the legislative intent of Senate Bill 212 (2001).  Because the court kept the evidentiary record open only for legislative history, Plaintiffs' submission of a DEQ permit was improper

_____
[1] The court's references to the Oregon Revised Statutes (ORS) are to 2021.

and was not received into evidence. While Senator Kruse's statement does relate to legislative history, Oregon courts have held that "[s]ubsequent statements by legislators are not probative of the intent of statutes already in effect." *United Telephone Employees PAC v. Secretary of State*, 138 Or App 135, 139, 906 P2d 306 (1995). Because the statement is not probative of legislative intent, Defendant's objection is sustained, and the statement was not received into evidence.

## I. STATEMENT OF FACTS

The subject property is a 142.52-acre portion of a 185-acre farm located on Rogers Road in Roseburg, Oregon, consisting of four tax lots: R16556 with 17.29 aces, R122680 with 54.77 acres, R122682 with 26.66 acres, and R44862 with 43.80 acres. On May 24, 2022, Defendant issued a notice of disqualification removing 27.31 acres of the subject property from Exclusive Farm Use (EFU) special assessment under ORS 308A.113(1)(c). The disqualification was detailed as follows: 7.34 acres of R16556, 15.74 acres of R122680, 2.41 acres of R122682, and 1.82 acres of R44862 were removed from EFU designation on the basis that "the land has changed to a non-qualifying use such as residential, commercial or industrial." *Id.*[2] Specifically, Defendant asserts that the disqualified section of the farm is a wastewater treatment facility, processing organic waste into biosolids and reclaimed irrigation water, is commercial in nature, and is not an allowed farm use as defined in ORS 308A.056.

Heard testified that the main treatment facility is located on 17.29 acres of the farm (part of the section disqualified by the county). This section was the first piece of property the Heard family purchased. Years ago, they filed for a conditional use permit to conduct a commercial operation in conjunction with farm use. Plaintiffs also have a Water Pollution Control Facilities

---

[2] Prior to trial Defendant agreed to reduce the disqualification from 27.31 acres to 20.4 acres adjusting the accounts as follows: R16556, reinstating 5.50 acres of the 7.34 acres disqualified, and R122682, reinstating 1.41 acres of the 2.41 acres disqualified.

Permit issued by the DEQ and are closely monitored by the DEQ and the Environmental Protection Agency (EPA). Heard testified that the County Planning Advisory Committee, Department of Land Conservation and Development, and DEQ participated in the implementation of the reclaimed wastewater, the biosolids operation, and the building of the water impoundment at Heard Farms. According to Heard, the county also provided a land use compatibility statement, allowing this operation to be put on EFU land.

Material that can be digested organically, such as residential waste, food manufacturing waste, and city waste is brought to Plaintiffs' main treatment facility from sources including septic tanks, city municipalities, dairies, restaurants, and egg producers. Plaintiffs charge for allowing material to be unloaded at the facility, and Heard testified that this is the largest economic portion of their operation.

The waste material is screened as it goes into the facility to separate the liquid from the landfill material. The liquid is anaerobically digested in a natural, biological process until it passes the DEQ's and EPA's Class B biosolids standard. From there, it goes into a secondary storage facility and then is pumped to a "dewatering" facility. At the "dewatering" facility, a polymer is added to the organics that causes them to be heavier than the water. The material moves through a centrifuge, which squeezes the material so the filtrate (liquid) can be separated from the organics. The organics turn into a concentrated dewatered form and are stored in the fertilizer storage facility. The filtrate from the dewatering process gets stored in irrigation ponds. The fertilizer is mostly used on Plaintiffs' farm, but the excess is given, not sold, to neighboring farms for fertilizer. Plaintiffs process the material all year long but can only discharge the biosolids onto the farm from May 1 through October 31, which they do every year.

When it is time to irrigate the farm with the liquid, they disinfect the water, as DEQ requires. They begin by aerating the water to mitigate the odor and lessen the amount of

ammonia as it could overload the grounds. Then they inject parasitic acid into the water, which does not leave residue on the fields, and a main velocity mixer stirs it into the liquid until it is completely immersed. Parasitic acid needs five minutes of detention time to be effective. The water usually takes ten to fifteen minutes to reach the first sprinkler, meaning the water has been disinfected, though not completely sterilized, by the time it is applied.

Heard testified that the biosolid and irrigation water production is integral to the farm and enhances the quality and volume of their own and their neighbors' products, since the organic nature of the fertilizer digests better into the plants than a commercial fertilizer would. Additionally, when applied correctly, it does not pollute the ground water because it is digested by the plant. He asserted that the biosolids process is a beneficial reuse that keeps wastewater from being discharged into state waters.

Heard testified that Plaintiffs have never sold the biosolids; they have used it on their farm and only given the excess away to neighboring farmers. Heard argued that though this process enhances their profit, it does not make them a commercial operation. He testified that agriculture needs to make money and that the irrigation ponds and processing procedures are strictly agricultural.

Additionally, Heard argued that Plaintiffs should not be penalized with additional tax for pursuing this operation because this process provides a positive service for the southern portion of the state. Excluding the operation from an EFU designation does not provide incentive for farmers to provide this service. He estimated that the biosolids operation deals with around 75 percent of the rural waste in southern Oregon, and he asserted that, before Heard Farms began this, at least 97 percent of all that material was treated by municipalities before being discharged back into state waters.

Defendant did not call any witnesses to testify. However, Podlesnik clarified that

Defendant believes the biosolids facility and processes change the portions of the subject property from farm use to a commercial operation for which Plaintiffs have a conditional use permit. The county does not view the ponds as "water impoundments" because the water in these ponds must be treated before irrigation. The water must be disinfected through a DEQ monitored process and is not available for irrigation until it is in the piping, not the pond. Additionally, Defendant argues the fertilizer storage facility serves to stockpile a commercial biproduct, and that does not fit within the provisions of ORS 308A.113(1)(c). Podlesnik asserted that the fertilizer and irrigation water are commercial biproducts, making the main treatment facility and the fertilizer, or biosolids, storage facility commercial in use.

## II. ANALYSIS

The issue before the court is whether Plaintiffs' process of collecting waste from communities for a fee, separating and moving inorganic wastes to landfill, and then converting the remaining wastes into biosolids and recycled irrigation to be used on the farm constitutes non-farm commercial activity that would disqualify Plaintiffs from receiving a farmland special assessment.

ORS 308A.050 outlines the state's policy emphasizing the importance of preserving farmland for agricultural purposes and discouraging its conversion to other uses. The legislature promotes this goal by reducing taxes for properties that employ qualified farm use and discouraging changes from that use by implementing property tax lookbacks when a property is disqualified from special assessment. The general rule is that all real property is presumed taxable, and exemption is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.,* 301 Or 423, 426–27, 723 P2d 320 (1986). In cases where the intent of the legislature is unclear, the court will conclude that exemption is not warranted. *North Harbour Corp. v. Dept. of Rev.,* 16 OTR 91, 95 (2002).

ORS 308A.062(1) defines qualification for a farm use special assessment as "[a]ny land that is within an exclusive farm use zone and that is used exclusively for farm use shall qualify for farm use special assessment under ORS 308A.050 to 308A.128, unless disqualified under other provisions of law." Under ORS 308A.056(1), farm use "means the current employment of land for the primary purpose of obtaining a profit in money by:

> (a) Raising, harvesting and selling crops.
> (b) Feeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof.
> (c) Dairying and selling dairy products.
> (d) Stabling or training equines, including but not limited to providing riding lessons, training clinics and schooling shows.
> (e) Propagating, cultivating, maintaining or harvesting aquatic species and bird and animal species to the extent allowed by the rules adopted by the State Fish and Wildlife Commission.
> (f) On-site constructing and maintaining equipment and facilities used for the activities described in this subsection.
> (g) Preparing, storing or disposing of, by marketing, donation to a local food bank or school or otherwise, the products or by-products raised for human or animal use on land described in this section.
> (h) Implementing a remediation plan previously presented to the assessor for the county in which the land that is the subject of the plan is located.
> (i) Using land described in this section for any other agricultural or horticultural use or animal husbandry or any combination thereof."

ORS 308A.056.

The parties agree that the subject property is in an EFU zone and much of the land was used to raise hay. However, Defendant concluded that the portions of the land containing the Main Treatment Facility, Dewatering Facility, Irrigation Ponds, and the Fertilizer Storage Area involve commercial waste management use, not farm use, and therefore disqualified those portions of the property from farm use special assessment.

In analyzing whether the portions of the subject property are subject to disqualification, a myriad of cases consider subparts of specially assessed property to determine whether a specific portion should be disqualified. *See generally Evergreen Aviation v Dept. of Rev.*, 22 OTR 1

(2014) (evaluating discrete subparts of a museum complex to determine whether each qualify for an exemption related to scientific activity). Conforming to this precedent, this court takes the position that each component of the subject property must be considered separately. The court will take up each disputed component in turn.

A.      *The Main Treatment Facility Is Not a Farm Use*

The main treatment facility is where Plaintiffs accept waste from municipalities, restaurants, and residential properties and charge a fee for their deposit. Heard testified that the fee is a main source of income for the farm. He explained Plaintiffs separate out the "bad stuff" from the waste and remove it to a landfill. The court finds this process of collecting a fee for waste disposal is not a farm use within the definitions found in ORS 308A.056(1).

Plaintiffs cite provisions in ORS chapter 215 for the proposition that their processes involving wastes constitute farm use. ORS 215.203(1) provides that EFU land "shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284." Those statutes include many uses that are not directly related to growing crops or raising animals, such as churches, operations for exploration of geothermal resources or minerals, or an armed forces reserve center. ORS 215.213(1)(a), (g), (h), (s). In 2001, the Oregon Legislative Assembly passed Senate Bill 212, amending ORS 215.283 and ORS 215.213, providing additional allowed uses on EFU land. That bill stated in pertinent part:

> "An acceptable use of land in an area zoned for EFU is
> "* * * the land application of reclaimed water, agricultural or industrial process
> water or biosolids, or the onsite treatment of septage prior to the land application
> of biosolids, for agricultural, horticultural or silvicultural production, or for
> irrigation in connection with a use allowed in an exclusive farm use zone under
> this chapter."

ORS 215.283(1)(v) (nonmarginal lands counties); ORS 215.213(1)(y) (marginal lands counties).

///

Plaintiffs argue that the Oregon Legislative Assembly specifically intended SB 212 to include the type of processes employed on the subject property as acceptable farm use eligible for special assessment. While the court agrees that the processes constitute acceptable use of EFU land, the court disagrees that all the processes are farm use for purposes of property tax special assessment. ORS 215.283 and ORS 215.213 are zoning laws and not tax laws. Just because a zoning provision allows a particular use on EFU land, it does not automatically render that use as "farm use" as defined by ORS 308A.056. For example, building a church on EFU land is an allowed use, but no one would argue that a church is eligible for a farmland special assessment, although it might qualify for a different tax program. The aforementioned zoning laws provide guidance for the zoning processes as can be seen in Plaintiffs' involvement and victory in a zoning/land-use decision regarding the same processes involved in this case. See, *Wilbur Residents for A Clean Neighborhood v. Douglas County*, 166 Or App 540, 542, 998 P2d 794 (2000) (approving Heard farm's "proposal [ ] for a two-stage lagoon operation to process and treat waste that, after treatment, will be reduced to 'approximately 3% solids' and will be capable of being 'applied by irrigation' as fertilizer on farmland.")

The zoning laws that make Plaintiffs' main treatment facility an allowed use on EFU property are not found in ORS 308A.050 to 308A.128 and do not confer special tax treatment to the portion of the property dedicated to that process. If the legislature intended to give that process special tax treatment, they would have included that process in the farm use special assessment statutes. In the absence of such a reference in ORS 308A.56(1), the court finds that the main treatment facility was properly disqualified from farm use special assessment.

B.    *The Dewatering Facility Is Not a Farm Use*

The dewatering facility separates out organic material from water, yielding fertilizer and irrigation water that are primarily used on Plaintiffs' farm. However, like the main treatment

DECISION  TC-MD 220403R                                                                                    8

facility, the dewatering facility and its function are not included in ORS 308A.056. The court observes that the legislature went so far as to specifically delineate that "land used for the processing of farm crops into biofuel" is an exempt farm use. ORS 308A.056(3)(L). Of course, Plaintiffs are not processing crops into biofuel. The court finds that the dewatering facility does not constitute farm use and was properly disqualified from farm use special assessment.

C.      *The Irrigation Ponds Are Water Impoundments and Are Farm Use*

Plaintiffs take the water separated from the dewatering facility and pump it into ponds. Defendant argues that the ponds are filled with water which cannot be used immediately on its crops. There are time and chemical processes regulated by DEQ before the water can be used for irrigation. Both parties rely on this court's decision in *Sabroso Company v. Jackson County Assessor* in support of their positions. TC-MD 030863D, 2004 WL 614543 (Or Tax M Div, Mar 29, 2004). In *Sabroso*, the county concluded that the land was not exclusively used for farm use because "the reservoir built to hold water for irrigation was licensed as a Water Pollution Control Facility and its 'primary use' is 'water purification.'" *Sabroso* started with the definitions contained in ORS 215.283(1)(y) and ORS 215.213(1)(bb) to find that land application of reclaimed water for agricultural production is an acceptable use in an EFU zone. Next, finding no statutory definition of the term "water impoundment," the court used the dictionary definition of impound/impoundment as "a body of water formed by" collecting or confining "(water) for irrigation." *Sabroso* at *3 (citing *Webster's Third New Int'l Dictionary* 1136 (unabridged ed 1993)). The court determined that despite the irrigation system being permitted by the DEQ, the "system is designed to collect or confine water" and the "water collected by the system is used to irrigate the subject property." *Sabroso* at *3. The court concluded that the reservoir lying on land was a water impoundment, which is specially enumerated in ORS 308A.056(3)(g), to be a qualifying farm use.

DECISION  TC-MD 220403R                                                                                              9

Defendant distinguishes *Sabroso* arguing that before the liquid in Plaintiffs' irrigation ponds can be used there are processes required to make it safe for use and to comply with DEQ requirements – aeration and addition of chemicals. That is true, however, just as in *Sabroso*, water in the ponds required processing before irrigation was permitted. Plaintiffs' ponds are designed to collect water and that water exclusively irrigates Plaintiffs' farm. The court finds Plaintiffs' ponds are water impoundments. ORS 308A.056(3)(g) provides that "[w]ater impoundments lying in or adjacent to and in common ownership with farm use land" is a farm use. Thus, the court concludes that Plaintiffs' irrigation ponds are water impoundments and constitute farm use as allowed in ORS 308A.062(1).

D.      *The Fertilizer Storage facility Is Farm Use*

Plaintiffs' system takes the organic material from the dewatering facility to a fertilizer storage facility for subsequent application to the fields where it grows hay. Heard testified that the organic fertilizer produced by its processes makes their crops much more productive, and as a bonus, being a natural product, does not poison the groundwater as can happen with other fertilizers.

Two provisions in ORS 308A.056 support a finding that a fertilizer storage facility constitutes farm use. First, ORS 308A.056(1)(f) includes "facilities used for the activities described in this subsection," meaning farming. Second, ORS 308A.056(3)(f) includes "land under buildings supporting accepted farming practices * * *" Accepted farming practices is defined as "a mode of operation that is common to farms of a singular nature, necessary for the operation of these similar farms * * * and customarily utilized in conjunction with farm use." ORS 308A.056(4)(a). Use of fertilizer is an integral and customary part in growing crops. The court finds that the fertilizer storage facility represents a farm use, and thus, it should not be disqualified from farmland special assessment.

DECISION  TC-MD 220403R                                                                          10

III.  CONCLUSION

The court finds that portions of the subject property used for the main treatment facility and dewatering facility were properly disqualified from farm use special assessment.  The court further finds that portions of the subject property used as ponds and as a fertilizer storage facility were improperly disqualified from farm use special assessment.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part as described above.

Dated this ___ day of June 2024.

_____
RICHARD DAVIS
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Richard Davis and entered on June 17, 2024.***